Opinion op the Court, by
Ch. J. Boyle.
A. Morehead and Robert Latham*, being partners in £racje al¡)(j generaj agen£s for each other, became indebted to the Bank ofKentucky in the sum of $15,914, for-money advanced" to them at the Russellville Branch on sun<^r^ no^es discounted at their instance,.and - to secure the-payment* of those not^r, orsuch as should -be *169 givea.ln Renewal in whole or in part of tho.se .nqtes, on the 81h day-''qf'Óctoben,-''-í817, they mortgaged to the bank, by a deed beaming that date, twenty slaves therein named. , Morehead, on the same day,vby his separate deed,.as a -further security for the paj'rripnt of the same note, .mortgaged a house and lot in the town of Russqll-ville and a tract of land called the Diltiilery-tracf; afj,d ori the 10th of October, 161?, by another deed, More-head, for the purpose of still further securing the pay-rnent of the same notes, mortgaged other tracts of land^ to which he recited he had but an equitafcde title. On the 15th of May, 1818, Morehead and Latham became further indebted to the bank, for two notes discounted, one of Philip Latham’s of $1,000, and the other of Rob-ert Latham &. Co. of $6,000; and to secure’the pa»yment of these notes, they mortgaged to the bank, by their deed of that date, nineteen of the same slaves th.ey had before mortgaged, and the same house and lot in Russellville, which Morehead had, by his separate mortgaged, and several tracts of land in Butler,- Christian„and Caldwell counties. On this deed there is an endorsement signed by Morehead, but without stipulating that Richard Jones’note of $2,60.0, by Robert Latham & Co. in phrt of their note of $6,000', mentioned in the deed, should, in case it was discounted, be a lien on the property mortgaged by the deed, except the house, and lot. Ón the 30th of December, 1318, Morehead having procured a note of John La-tham’s^óf $4,720, to be discounted, by his deed of that date-weferring to the deed of the 15th of May preceding, and, reciting that the slaves were also bound to secure Richard Jones’ note of $2,600, mortgaged the'slaves agam, to secure the payment oí the note oí John La-tharn for $4,720, and of such othqrs as should be given in renewal of it.
Tbe “L® g^eeismorely equitable, inasmuch as toüi^mort-0 gaged^rop-ertj-,isin the”* fi^tmortSa' §
'Bhe act of as^“k'y mortgages' shalfbé -void, the pre. scribed time, g^y"in ivbich tbe le-Sal title pass-mortgagee, D
Mortgages of ^“"^subject to the general rules of.,eA’ilty’ ference to-priority,
equity, that one creditor hasalinn and another creditor has a of a upon^leof’ these funds aad ih5 TO'tar creditor his whole de* mand -out of tho fund on nió° creditor has alienythe latter will be hare^the^ppi- or lien assigned to him.
*169 These deeds of mortgage were all recorded-in due time, and each of them provided that the bank, by tros-tees to be appointed,-might proceed to sell the saged property, in case of dgfanlt in payment of the calls which should be made by the bank. ,
On the 20th of July, 1819, Vance having become endorser of a bill of exchange drawn by Morehead and thamón Turner Morehead of Baltimore, for $4,500, payable ninety days after date, at the Union Bank of Maryland, Morehead -and Latham mortgaged to *170 nineteemslaves, the same which they had. before mortgaged to the -Bank of Kentucky, conditioned to be void if they should pay the bill of exchange when it'became due, and if not, that he might proceed to sell the slaves (_0 raise the moriey. They did not pay.the bill ofex-cjjangC •whenit became due; and about that time the Bank of Kentucky having appointed trustees to sell the slaves, in discharge of a part of the debt which still re-Hjained-due to them, Yance took possession of the slaves and sold one °f them for $350, when the bank, by filing a bill for that purpose, procured an order in virtue of which the slaves, except the one sold by Yance, were delivered to their trustees, who sold eleven of them for the ’sum of $4,146. The Bank then filed an amended bill, in which, as well as in their original bill, they claim, that prior to the sale of the slaves by their trustees, there was due to them, of the debts for which the slaves had been mortgaged, the sum of $7,784, with interest costs of protest, and m support of their claim, exhibit four several notes, protested for non-payment, three of which are in the name of Philip Latham, and the -four^ in the name of Richard Jones. One of these in ¿be name of Philip Latham, is for $4,000 dollars, and \s alleged to be a renewal of the note in the name of John Latham, for $4,720, the payment of which is secured by the mortgage of the 80th of December, 1818, and the ether two, one' of $1,000 and the other of $384, are alleged to be debts secured by the mortgage of the 8th of October, 1817. The note of Richard Jones; is for $2,400, being given in renewal for so much of his^ote ■of"$2,600, for the payment of which, the slaves were agreed to be mortgaged by the endorsement made upon one of the deeds of mortgage. To their original and^amended bill, the bank make Morehead and Latham and Vance defendants, and they pray that the equity of redemption in the slaves may be foreclosed, &c.
If the lien 0f the prior creditor can* ought to be satisfied out nior° creditor canhotreach.
.Yance, in his answer, denies that the two notes of Philip Latham, the one of $1,000-and the other of $38.4, constitute any part of the.debts secured by the mortgage of the 8th of October, 1817; alleges that the $2,400 which remains due of the note of $2,600 of Richard Jones, being made alien upon the slaves only by an agreement endorsed upon one of the deeds of mortgage, and which was never recorded, ought to be postponed-to the lien created by his mortgage; and in-
*171 ^j-sfss'th,a-t* the pSÍl'estat^Híbrtga’géd :ío the babk, '^íéñt’td^sa'í’fsfy íheMelTts duV't'd ''|hem',b'an'd''that they sboiyld'be compelldff to-iEesár-t tó'M'n'th'é first instance,' ‘andjeaye tlie* slaves tó satisfy; Bis demand, frei-ngdhe on-lyj'fuh.d'to.whiGhhe candía v&JreepuBse fór tha't purpose. He1'ibakes his answer á cross bilbf* and prays for- relief accjpydiñgl'yí making the’bank and Moreh'ead. and. La-tKamt defendants. ’’' :
* Motehead, for'Himself, and as administrator-of La-tham,-he Having died, answered the originafand amend-, ed 'bills filed by.the bank'lwid the cross'd) ill filed, by Vance, and in substance admits the justice of the-demand-made by each party against him, to the extend dfarrhed' by them respectively.'- ,,
"''life-bank, in their answer to Vance’s cross bill, in-, sist upon the correctness of their claims, as asserted in-their originaland-amehded bills; and as to the real estate• mortgaged, to them, they allege that prior to Vance’s mortgage, Moreliead, with their assent, sold the house 'and lot' in the town of Russellville and the Distillery-tract, and delivered possession to the purchaser, to.> ' whom"he has since conveyed; that for the landsjp which' Mbrehead had but an equitable title when he mortgaged'them to. the bank, he'has since obtained the legal ii-ilfej and-conveyed them'to the'Farmers and Mechanics’ *Bankof Russellville; and that the residue of the lands mortgaged, lie in. remote places andaré of but little ^aíúe; and,they insist upon their right, as first mortga^ *gées, -to have their debts satisfied out of the slavesf
The-circuit court-was of opinion, 1st, that* the.‘t'vfo notes óf'Philip Latham, the one for $(4,000'arid the other for- ‘$1,000, vvere secured by, the mortgages on the slaves; 2d, that Philip Latham’s. n*ote. to the‘bank' for. $384, was not provided for by either of the-mortgages; 3d, that Richard Jones’note for §2,400, was not such a -lien on the slaves as to-'he entitled to a preference to Vance’s mortgage;' and 4th, that the bank was'. Hot btHi-nd-to proceed against fhereal estate. 'And a-dé-*-xree was pronounced by that- court accordingly, from. '“which both pa;rties have appealed»:
'The-debts, due ta, the'bank prior to the sale of'the slaves by their trustees, are-clearly established to tlie amfwiht of §7,784, and, for the'payment of that-isum, wi|S interest and cost-s bf protest', they have an' irid'ispu-f30l‘erliq,n--up0&aUthe mortgaged''estate, both of slaves *172 and land, as against Morehead, who admils,the justice 0f their claim ;' but to what extent-they have such lien as against Vance, is a different question. Their right to 'alien upan the sla.ves for,the two notes of Philip Latham, the one of $4,000 and-dhe other of $1,000, does not admit of any serious doubt; for the evidence shows’ very satisfactorily, that the latter is embraced by "the mortgage upon the slaves of 8lh of October,. 1817, and ■that the former is provided for by the mortgage of the 30th of December, 1818.
Their right to a lien upon the slaves for Philip La-tham’s note of $384, presents itself in a more questionable shape. On the part of the bank the note is contended to be a continuation in part of one of the notes, the-payment of which is secured by the mortgage of the 8th of October, 1817; but the testimony on this point is contradictory. Morehead, whose deposition wa*s taken by the bank to establish the fact; says that he believes it to be true; but he speaks of it with doubt and hesitation, and the clerk of the bank swears, that from an examination of the books of the bank, he does not, believe the note in question to be a continuation of' either of those secured by the mortgage of the -8th of October 1817; and the extracts from the books, lend strongly to fortify his testimony. We concur, therefore, with the circuit court, in the opinion that the weight of the evidence is against the right of the bank to a lien upon the slaves for the payment of the note of $384, as against Vance. But we cannot concur with that court; in the opinion that the lien of the bank upon the "slaves,’ for the payment of the note of Richard Jones of $2,400, ought to be postponed to Vance’s mortgage.
The agreement that the slaves should be hound for the payment of that note, is recited in the mortgage from Morehead to the bank, of the 30th of December, 1818. That mortgage is prior to Vance’s mortgage, and was recorded in due time; and if the - agreement binding the slaves for the payment of Jones’ note, had been contained in that mortgage in formal words, there could not have been a doubt that the lien’of the bank ought to be preferred to that of Vance. But the recital of an agreement in a deed, is, in law, equivalent to an agreement made by the deed; and hence it is held, that upon such recited agreement, an action of covenant *173 .iilllfe.' ' 1 Marsh 476; Esp. Nisi Priús 268. * Bat páttihg thebSp^igage of .the ' 30th' ©f Decerpber, 1818,' óíít'o-f the case, and;supposing-tRe ‘Question to' depend iipon 'the > efféct of the agreement endorsed upon the mortgage" of the'15th of May, 1818, we 'should still 'dif-fér. from the circuit court.. t'
djpoñ that supposition, we cannot doubt, that, according ',to 'the general principles of equity, the lien of the báhjlupon the slaves for Jones’note, ought to be pié-’ fetrLd to Nance’s mortgage. . The agreement endorsed upon the mortgage of the l ath of May, 1818, though not recorded, gave to the bank an equitable lien upon the slaves for the payment of Jones’ note, and Vance’s mortgage could have given him no more than an equita-ffleíien upon the slaves; for the legal title to the slaves, had. been before conveyed to the bank by the mortgage' d’f the 8th of October, 1817, which was duly recorded. It i's'true, as the agreement that the slaves should be behind for the payment of Jones’ note was not recorded, that, Vance cannot be presumed to have had. notice of it, and there is no proof of his having had notice in fact of it-; but it is equally true, that the bank could have ' had ho notice of Vance’s mortgage, when they adván-céd the-money upon Jones’ note, and took the agreement binding the slaves for its payment; for that agreement, though without date, was evidently made prior to Vance’s mortgage; for the agreement purports to be made when Jones’ note was offered for discount, ánd the note bears date long anterior to Vance’s ..mortgage. Besides, the agreement is recognized in theyjportga'ge '• of the 30th of December, 1818, and^lhat was before the dateof Vance’s mortgage. It is, therefore, impossible that the bank should have had notice of Vance’s mortgage when the agreement was made binding the slayes to the payment of Jones’ note. The equity, then, ofthe bank'; is equal to that of Vance, and they have, moreover, the legal title; and it is a settled rule, that where the equity of mortgagees is equal, he'who has the legal title must be preferred. Hence it is, that & puisne riVortgagee, who gets the legal title from the first mortgagee, is permitted to avail himself of its advantage, and’thus protect himself against-an intermediate moft-gaged. .But even supposing the legal title m this case to hp in a stranger, and not in the bank; yet the equity of the bafrk beipg prior to that of Vance, ought to bé *174 preferred; for with respect to rights merely equitable, ru]e jSj that priority of time gives the advantage id right, according to the maxim, qui prior est tempore po-tior est jure,. The circuit court, however, without noticing these general principles of equity, has founded its opinion exclusively upon the statutory provision of this country, making mortgages, when not recorded in due time, void, as against purchasers and creditors. But surely this provision ought not to receive such a construction as would render it subversive of the general principles of equity. Neither the language used in the provision, nor the object of the legislature in its enactment, requires such a constructiono. The provision is found only in a statute regulating the mode of conveying the legal title, and the language used in. it ought to be construed like that of every other instrument,, with reference to that which is the subject-matter of the statute. Thus construed, a mortgage, in the meaning of the provision, is a conveyance of the legal-title, and’ not of a mere equitable interest, and that this, is the- true sense of the word, as used in the provision, is evident from the circumstance of the mortgage being made void against purchasers and creditors; for a purchaser, in the legal sense of the word-, is one who has acquired-the legal title, a mere equitable title being in legal con-. templation nothing, and not even to be noticed in a court of law. And how could any one be a-purchaser in consequence of the mortgage being void, unless the mortgage had been of the legal title? So, with respect to the creditor, it is evident, in the correct meaning of the-provision, the thing mortgaged must be of a character-' upon which he would be entitled to have a legal lien-for the satisfaction of his debt; but at the time- when the-provision was enacted, a creditor jjad no such lien upon a mere equitable title, and why should- a mortgage-of a mere equity be made void, as to a creditor, when he could, in law, be entitled to no lien upon it for tb§-satisfaction of his debt?
It is plain, therefore, that,the provision in question can only be construed to refer to the legal, and riot the equitable rights of the parties; and when thus construed, it will have its due effect without being in conflict with the general principles of equity, and, of course’^ can have no bearing upon this case.
*175 jdTIa.e bank, tften,t,has a Hen upon ihe slaves mortgage ás to Vhém, as'against .Vance, for the whole amount of their debt of $.7,784, except J$’384, the amount of Philip Latham’s note for that sum. ' ..j .
It only remains then to enquire, whether the..,bank shouldbe, compelled to resort, in the first instance, to the. real éstate, before they can be entitled tó' have satisfaction pf their demand out of the slaves.
Here it is proper to premise, that it appears that the bank, prior to Vance’s mortgage, had assented Afo the sjde by Morehead, of the house and lot in Russellville and the'Distillery tract; and having thus relinquished their lien upon that part of the real estate, as they had aii unquestionable right to do, there can be no pretence ©/right to subject it to sale in satisfaction of the demand, either of the bank or of Vance. As to those lands to which Morehead had but an equitable title, it appears that the legal title has been since conveyed to the Farmers and Mechanics’ Bank of Russellville, and before they could be made subject to the mortgages of tbe Bank of Kentucky, the Farmers and Mechanics’ Bank ought to be made a party to the suit; and as to the residue of the lands, they having been jointly mortgaged by Morehead and Latham, cannot be decreed' to fee sold either in satisfaction of the demand of the bank or of'Vance, unless the heirs of Latham had been'made, parties. There must, therefore, be some time consumed in bringing the proper parties before the court, in order to subject the lands to be sold, and whether it is the duty of the bank or of Vance, to do this» depends Upon the question whether the bank ought ter resort to the lands in the first instance, in satisfaction of their demand. ' 1 •
/It is undoubtedly a general principle of equity, that if ohfecr.éditor has a lieh on two funds, and another creditor has a lien of younger date upon one of those funds only, aná the.prior creditor elects to take his whole demand out of'the fund on which the junior creditor has a lien, the lattbr will be entitled to have the prior lien assign-ejTolhira, or to be substituted in the place of the, prior creditor. 1 Johnson’s Chancery Reports 409. If the Jfeh'.gfihe prior creditor cannot be thus assigned, nor tlife juniqr creditor be substituted in the place of the jprmf creditor, the same principle would unquestióna- *176 bjy require that the prior creditor should, in the first instance, resort, for the satisfaction of his demand, to that fund which could nbt be reached by the junior creditor, But there are but few cases in which'the lien cannot be assigned or the junior creditor be substituted'in his place, and ithis is certainly not one of them; for the mortgages upon.the re^l estate may be assigned by the bank to Vance, or at least he may be substituted in the place of the bank, and thus have the benefit of the lien which the bank has upon the real estate; and surely there' can be no reason, where this can be done, why the prior creditor should be compelled to abandon his election against which fund he should proceed.
We are, therefore, of opinion, that after giving credit for the amount ofthe price of the slaves sold by the bank, they are entitled to have the residue of the slaves sold, in discharge of the remaining part of their demand, except $>384; that if the slaves should bring more than shall be sufficient for that purpose, the surplus should go towards satisfying Vance’s demand; but if they should not bring so much, Vance should be decreed to pay to the bank the amount of the price he received for the slave sold by him, or so much thereof as may be necessary to supply the deficit; and that the bank should ass.ign to Vance’s representatives, the mortgages upon the real estate, except the house and lot in the town of Russellville and the Distillery tract, reserving, however, to themselves, their lien for $384; for as to that, their equity to the lien upon the real estate, is equal to that of Vance;.and having the legal title, they ought to be preferred'; and furthermore, that Vance’s representatives, if they should choose to do so, should be permitted to bring the proper parties before the court, to fubject the lands aforesaid to sale, in satisfaction of his demand.
The decree must be reversed and the cause be remanded tó the circuit court, for a decree to be there entered in conformity to the foregoing opinion, and such other and further proceedings had, as may be agreeable to equity, and not inconsistent with this opinion. Vance’s representatives must pay the-costs of both appeals.