## KIRKSEY, ET AL. vs. MITCHELL.

1. D. sold sundry tracts of land to L. on a credit; L. sold one of them to B., and another to M: D. agreed with B. to release the tract purchased by him upon the payment of a certain sum of money; but at the time of this agreement D. was not informed that M. was a sub-purchaser of L; D. obtained a decree for the sale of the lands, to satisfy his equitable lien, and assigned the decree to K: *Held,* that the land claimed by M. was not exempted from the operation of the decree by the arrangement which D.

made with B., nor could it be released by the payment of a sum corresponding with what was paid by B., considering the relative value of the two tracts.

2. Neither the purchaser of lands, nor his assignee, can be charged with rents received upon a bill to enforce the equitable lien of the vendor; and if the assignee of the vendee becomes the assignee of the decree recovered by the vendor, a sub-purchaser of a part of the land from the vendee cannot relieve it from the decree, by compelling the assignee to appropriate the amount received by him for rent, to the satisfaction of the decree, *pro tanto.*

Writ of Error to the Court of Chancery sitting in Talladega.

In April, 1840, the defendant in error filed his bill setting forth that on the 17th day of August, 1838, he purchased of Robert L. Lane, the east half of the north west quarter of section thirty-two, in township sixteen, range six in the Coosa Land District, for the sum of five hundred dollars, paid in hand, and received from his vendor a bond conditioned to make " full and sufficient title" to the same. At the time of his purchase, the complainant was put in possession of the land, and thereupon improved the same, by clearing and putting in cultivation one half, and inclosing with a good fence the entire tract. The complainant supposed he was purchasing an unincumbered title, but has recently learned by a newspaper printed in Talladega, that the land in question was advertised for sale on the 4th day of May, 1840, by the Register of the Court of Chancery sitting in that county, as well as other lands of Robert L. Lane, to pay to Eli M. Driver the purchase money for the same. All of which lands the complainant is informed had been sold by Driver to Lane.

It is charged in the bill that Lane had from time to time paid Driver, on account of his purchase, different sums of money; that the land in controversy is the only tract included in Lane's purchase from Driver which the former had disposed of, unless it be another eighty acre tract, for which Driver has received payment since Lane removed from the State.

Complainant is informed that at the last term of the Chancery Court holden in Talladega, Driver obtained a decree in equity, subjecting all the lands purchased by Lane from him, to sale for the purchase money; and which is now advertised as above stated. It is alledged that this decree was obtained through the

fraud and collusion of Driver and Lane, and is, as complainant believes, for more than two thousand dollars, what is due to Driver, and embraces a large amount of usurious interest.

The lands purchased of Driver and which were left undisposed of when Lane removed from this State, it is alledged, were abundantly sufficient to pay off the demands of the former, with costs and charges, without recourse to the eighty acres of which the complainant is in possession.

It is then alledged that Lane absconded from this State, in 1839, and is now believed to be a citizen of Texas; that Driver resides in the State of Mississippi, both of whom it is prayed may be made defendants to the bill. The complainant further prays, that the Register of the Chancery Court may be decreed to sell the lands embraced by the decree referred to, in half quarter sections, that it may command a fair price; that he may be enjoined from selling the land embraced by the complainant's purchase until all the other lands directed to be sold shall have been disposed of, and if these shall be sufficient to satisfy the demand of Driver, then the injunction be made perpetual. And upon final hearing the title of Driver and Lane may be divested, and vested in the complainant, pursuant to the bond of the latter for title. *Lastly* that the decree in favor of Driver against Lane, if ascertained to be usurious, may be opened and corrected, and that such other and further relief as may be proper, be granted.

Upon the coming in of the answer of the defendant, Driver, the injunction was dissolved, on motion, and the bill continued as an original.

The defendant, Driver, in his answer, admits that he sold several tracts of land to his co-defendant, Lane, and executed his bond conditioned to make him titles when the purchase money was paid. *Further,* that the eighty acres claimed by the complainant, were embraced by the sale to Lane, but respondent was not informed of his purchase until his bill was filed.

Respondent admits that he obtained a decree as alledged in the bill, for four thousand dollars, but denies that it was obtained by fraud, or other unjust means, or for a greater amount than is really due him. He denies that decree is swelled by including usurious interest, and concludes with a demurrer, pursuant to the statute.

In August, 1842, a supplemental bill was filed by the com-

plainant, reciting the substance of the original bill, and stating that since the decree was rendered in Driver's favor, all the lands which were ordered to be sold, except the half quarter claimed by the complainant, and the same quantity, to wit, the west half of north east quarter of section twenty-seven, in township sixteen in range six east, had been sole under the decree. This latter tract had been previously purchased of Lane by Robert W. Berry, for which the latter paid six hundred dollars, After the complainant's bill was filed, Berry exhibited his bill, and in like manner obtained an injunction.

It is also alledged, that after the decree in favor of Driver was obtained, and before the sale of the land under the same, Driver sold all his interest in the decree to Isaac Kirksey, who then undertook the sale of the lands. Previous to his purchase, and after the removal of Lane, Kirksey took possession and rented out much of the land, for a sum amounting to five or six hundred dollars—all which should be applied in extinguishment of the equitable lien of Driver, so as to relieve the complainant. When Kirksey was about making the purchase of Driver, he came to complainant to borrow money to enable him to consummate it, saying he would satisfy the decree from the other lands, excluding that claimed by the complainant, and that the latter would be thereby protected. Under the impression that such would be the result, the complainant lent him three hundred dollars, no part of which has ever been refunded.

*Further*, that Driver and Kirksey have confederated to bring the complainant's land to sale, and to relieve the half quarter purchased by Berry from the operation of the decree. Driver has been fully paid off the sum due him from Lane; that Berry has paid to him two hundred dollars, (which should be entered as a credit upon Driver's lien,) in consideration of which Driver and Kirksey are to exempt his land from sale, and cause the complainant's land to be sold. That if Kirksey would credit the decree of Driver with "rents and profits," received by him, the sum paid or to be paid by Berry, and the amount for which the lands sold, the decree would be satisfied in full; but this he refuses to do.

The bill makes Lane, Driver, Kirksey and Berry defendants, and prays that an account be taken of the balance due on the decree of the "rents and profits" received by Kirksey, and the amount paid by Berry; and if any thing more be due on the de-

cree obtained by Driver, that Berry may contribute with complainant to discharge the same *pro rata:* And upon the complainant's bringing into Court his proposition, of the balance due, then the bill prays that all title to the plaintiff's land may be divested out of Driver, Lane and Kirksey. *Further*, that an injunction may be awarded to restrain a sale of the same, until the further order of the Court. An injunction was accordingly ordered and issued.

Kirksey answered, that he has no knowledge of the "transactions stated in the original and supplemental bills, as between the complainant and the other defendants," but so far as they affect him, he insists that the complainant be put to strict proof. It is true, the respondent "purchased of Driver the benefit of his decree" against Lane, before the lands were sold, and that they were afterwards disposed of by the Register, pursuant to the decree. As to his taking possession before the sale, respondent states that he held a deed in trust executed by Lane to him as *cestui que trust;* the lands were sold by the trustee and purchased by respondent; thereupon, with the exception of one quarter section, (which was not embraced by the sale,) they were conveyed to him. In virtue of that purchase, and not previously, the respondent took possession of, and rented a small part of them —not being able thus to dispose of the residue. The aggregate sum agreed to be paid for rent, would not, it is believed, exceed four hundred dollars; but be it more or less, he is entitled to retain it as his own, without being required to account to any one.

Respondent denies that he made to the complainant any such promises as he represents, in respect to the exemption of his lands from Driver's decree, and making the other lands yield a sufficient sum to satisfy it, or that he undertook to save him harmless. As for the money borrowed, the respondent denies that the loan was influenced by any such inducement as complainant intimates; he gave his note for the return of the same, and expects to refund it "in due time."

If respondent purchased the lands at a low price, it was at a fair sale, where he was the highest bidder. He admits that he agreed that Berry's land should not be sold, but denies that there ever has been such an agreement in respect to the complainant's land. Respondent has no knowledge of any payment having been made to Driver towards the extinguishment of the decree;

he refuses to allow the rents to go towards its discharge because they were his own ; and he refuses to allow a credit for any thing on Berry's account, because he has received nothing from him ; nor does he know that Driver has received anything, but if he has, it cannot be admitted that the complainant is entitled to the benefit of it. He also embraces in his answer a demurrer to the bill.

Berry, in his answer, denies all knowledge of a combination between Driver and Kirksey to exempt his lands from a lien for the purchase money. He admits his purchase as charged in the bill. On the 20th March, 1839, and before the transfer from Driver to Kirksey, of the interest of the former in the decree, respondent agreed with Driver, to pay and advance to him two hundred dollars, over and above the sum which he (respondent) had paid Lane ; in consideration whereof Driver was to execute titles to Lane for his benefit, and discharge his land from the operation of the decree. The two hundred dollars were paid, under a fair and *bona fide* contract, not to affect the interest of any one else, but merely to obtain Driver's relinquishment. This arrangement respondent was authorized to make ; especially as he had previously paid to Lane for his purchase, six hundred dollars, the full value of the land.

Testimony was taken at the instance of both parties, but it is not deemed necessary to recite the proof here.

The Chancellor was of opinion that Kirksey was not chargeable with the rents in this suit ; that if he received the lands as a purchaser at the trust sale, he was entitled to retain them, and if he received them as a wrong doer they must be recovered in " another *forum*." But as Driver had released Berry's land from his lien, in consideration of two hundred dollars paid him, he could not throw a heavier responsibility upon the complainant, who stood in the same predicament. Thereupon it was referred to the master to estimate and report how much money should be paid by the complainant to make his contribution equal to that accepted from Berry ; upon the payment of that sum by the complainant within thirty days, the injunction was made perpetual. Should the complainant fail to pay within that time, the bill was to be dismissed ; and in any event the bill as to Berry was dismissed at complainant's costs.

T. D. Clarke and S. F. Rice for Kirksey and Driver who alone assigned errors, made the following points : 1. The bills contained no equity and should have been dismissed. [Abercrombie v. Knox, et al. 3 Ala. Rep. 728.]

2. The lien of the vendor of lands exists against the vendee having an equitable title. [2 Story's Eq. 480 ; 5 Ala. Rep. 397.] The complainant and Berry stood in the same predicament with Lane, and as the latter might have stipulated with Driver to exempt any part of the land from his lien, and if he had retained the equitable title, Driver might have proceeded against a part, for the purpose of making his lien available, so it was competent for Driver and Berry to make an arrangement which would have that effect.

3. The bill does not alledge that all the lands were purchased at the same time by Lane, and it cannot be intended that the purchase was joint. This being the case, there is no pretence for adjudging contribution. as it respects Berry's land, to aid the complainant.

4. The doctrine of apportionment, or contribution, where there is a mortgage in fact, does not apply to a case like the present. If the complainant's land should be sold instead of Berry's, he could not call upon the latter to contribute, and this is a fair test. [1 Story's Eq. 461, and note 1, 462 ; 1 Johns. Ch. Rep. 409, 415, 425.]

5. If the two hundred dollars paid by Berry to Driver is to be credited upon the decree, Driver to that extent must refund to Kirksey, and of course is an indispensable party. The decree is erroneous because he was not brought in by the service of a *subpoena*, or publication.

6. There was no proof as against Driver and Kirksey to show the payment of two hundred dollars to the former by Berry ; the answer of the latter was no evidence against his co-defendants. If there was proof to this point, it is not perceived what benefit the complainant could derive from it. *Besides*, the equities as between the complainant and Berry cannot affect Kirksey. [3 Ala. Rep. 728.]

W. P. Chilton and L. E. Parsons, for the defendant, argued, that the lands sold by Driver to Lane, were charged with a general lien ; each part ought to bear no more than its due proportion

of the charge, and equity will compel each party who becomes a sub-purchaser to contribute rateably. [Stephens v. Cooper, 1 Johns. Ch. Rep. 425.] Berry and the complainant stand *in equali jure*, and equity in such case will decree contribution. [Duprey v. Johnson, 1 Bibb's Rep. 562; Peck v. Ellis, 2 Johns. Ch. Rep. 131; Martin v. Lundie, 6 Ala. Rep. 429; 1 Dess. Rep. 500, 542; 1 Rand. Rep. 328; 2 Id. 384.]

When a mortgage embraces several pieces of Land, and there are several purchasers, each one shall contribute, according to the value of his interest at the time the mortgage was executed. See as to Driver's lien, 15 Ves. Rep. 29; 4 Wheat. Rep. 256; 7 Id. 46; 5 Porter's Rep. 542; 3 Ala. Rep. 302.] Kirksey does not occupy a more favorable situation than Driver, and cannot enforce the lien to a greater extent than he could.

COLLIER, C. J.—It is well settled, that both the vendor and vendee of lands, have their mutual liens, the former for the purchase money due, and the latter for what he has paid, if the contract is rescinded, or from any other cause the money is to be refunded. [Foster v. The Trustees of the Athenæum, 3 Ala. Rep. 302; Hall's Ex'r v. Click, 5 Ala. Rep. 363, and authorities there cited; 2 Story's Eq. 462, *et post;* 1 Bibb's Rep. 313; 4 Id. 239; 4 Litt. Rep. 169, 190, 196; 1 Id. 216; 3 Bibb's Rep. 183; 4 J. J. Marsh. Rep. 169; 6 Monr. Rep. 199; 1 Mason's Rep. 212; 7 Wheat. Rep. 46; 9 Cow. Rep. 316.] In the present case this rule is not controverted, but it is contended that the decree in favor of Driver, for the purchase money, must be enforced against every distinct tract of land sold by him to Lane, according to the value of each; and that as this has been rendered impossible, by the discharge of the land purchased by Berry from the lien, the complainant's purchase must also be released upon paying a sum bearing a like proportion to its value.

When different parcels of land are included in the same mortgage, and are afterwards sold to different persons, each holding in fee and severalty the parcel sold to himself; in such case, each purchaser is bound to contribute to the discharge of the common burthen, or charge, in proportion to the value which his parcel bears to the whole included in the mortgage. [1 Story's Eq. 461.] It was accordingly held, that where six separate lots of land were mortgaged, and the mortgagee afterwards released

four of the lots from the mortgage, leaving the original debt as a charge on the others, that the two lots, (which had been transferred to third persons,) were chargeable with their rateable proportion of the debt and interest, according to the relative value of the six lots at the date of the mortgage. A creditor cannot, by any act of his, deprive the co-debtors, or owners of lands conveyed by way of mortgage, of their right of contribution against each other. [Stephens v. Cooper, 1 Johns. Ch. Rep. 423; see also, Id. 409; Morrison's Adm'rs, et al. v. Beckwith, 4 Monr. Rep. 76.]

This rule, it seems, is not confined to cases where the lien is created by a mortgage, deed of trust, &c., but extends to the vendor's lien for the purchase money ; and it has consequently been held, that an equitable lien on lands held by several persons should be enforced distributively against each, in proportion to his interest in the estate. [Poston v. Ewbank, 3 J. J. Marsh. Rep. 43; Stephens v. Cooper, 2 Johns. Ch. Rep. 430.]

It may also be stated, as a well established rule in equity that when one person has a lien upon two funds, and another a posterior lien upon only one of them, the person having both liens will be compelled first to exhaust the subject of his exclusive lien, and will be permitted to resort to the other only for a deficiency. [Piatt v. St. Clair's Heirs, 6 Ham. Rep. 233.] In Cheesebrough v. Millard, 1 Johns. Ch. Rep. 409, the Chancellor said, " I admit as a principle of equity, that if a creditor has a lien on two different parcels of land, and another creditor has a lien of a younger date on one of those parcels only, and the prior creditor elects to take his whole demand out of the land on which the junior has a lien, the latter will be entitled, either to have the prior creditor thrown upon the other fund, or to have the prior lien assigned to him, and to receive all the aid it can afford him. This is a rule founded in natural justice, and I believe it is recognized in every cultivated system of jurisprudence." He considers it well settled in the English law, and cites cases to prove it. It is said in the same case, that if a creditor exacts the whole of his demand from one of the sureties, that surety is entitled to be *substituted* in his place, and to a cession of his rights and securities, as if he were a purchaser, either against the principal debtor or his co-sureties. And if a prior creditor has put it out of his power to make the cession, it seems that he will be excluded from so much of his

demand as the *surety*, or subsequent creditor might have obtain-
ed, if the cession could have been made. But if the prior credi-
tor, who has disabled himself from making the assignment, has
acted with good faith, and without a knowledge of the rights of
the other creditor, he is not to be injured by his inability to make
the cession ; for the doctrine of "substitution rests on the basis of
mere equity and benevolence." See also, Cullum v. Emanuel &
Gaines, et al. 1 Ala. Rep. N. S. 23 ; 1 Story's Eq. 472, *et post*,
and cases cited in notes ; Piatt v. Law, 9 Cranch's Rep, 458 ;
Read v. Simmons, 1 Dess. Rep. 552 ; Bank of Kentucky v.
Vance's Adm'rs, 4 Litt. Rep. 169 ; Taylor, et al. v. Porter, 7
Mass. Rep. 355.]

Let this statement of principles and citation of authorities suf-
fice to guide us to a conclusion in the present case. As between
Driver and Lane, his vendee, the former might have enforced his
equitable lien against all, or any part of the land embraced by
the sale; or he might have purchased of him one parcel for a less
sum than Lane agreed to pay him for it, and have collected the
residue of his debt from the other lands. Does a different rule
apply as between Driver and his assignee, and a purchaser from
Lane?

Driver denies any knowledge of the right set up by the com-
plainant until after his bill was filed, and his denial is not in any
manner disproved; consequently it must be taken as true. The
sale by Lane to Berry, as well as its confirmation by Driver, was
made long before the institution of this suit, and upon principles
of equity Driver should not be prejudiced. He was not bound
to inquire what disposition his vendee had made of the lands, but
might, with the assent of the latter, deal in respect to one parcel
of it, as if he was still the proprietor of the residue. The sale by
Lane to Berry, with the subsequent assent of Driver, might be
treated as a repurchase by the latter, *pro tanto*.

The equitable right of the sub-vendees of land to compel the
original vendor to exert his lien for the purchase money against
the entire estate, that each separate parcel may be charged in
proportion to its value, must, like the doctrine of substitution,
have its foundation in equity and moral justice; and if the vendor
without a knowledge of the right of a derivative purchaser, has
disabled himself from thus proceeding, by an arrangement made
with his vendee, in good faith, his lien cannot be impaired. A

rule the opposite of this, would be too severe, and in our judgment cannot be supported either upon principle or authority. Kirksey it is conceded, does not occupy a position more unfavorable than his assignor, and it may be admitted that every defence that was available against the decree before its assignment may still be made.

It is not shown by the proof, that Kirksey took possession of any of the lands, until after he became a purchaser at the trust sale, under the deed executed by Lane for his benefit. His possession after that time, must be regarded as the possession of Lane, or rather as permitted by him. This is proved by the deed, which invests the trustee with the power of sale, and the evidence showing the execution of that power. The rents then, received subsequent to Kirksey's possession under leases thereafter made by him, became his own property, in virtue of the deed and the consequent proceedings. It was clearly competent for Lane thus to stipulate with Kirksey; and as he himself would be entitled to the rents, without being required to account for them to his vendor, he might transfer the same right to another person. See Chambers, et al. v. Mauldin, et al. 4 Ala. Rep. 477.

This view is conclusive to show, that the complainant is not entitled to the relief which he seeks; the decree of the Chancellor is consequently reversed, and the bill dismissed with costs.