## American Woolen Company v. Bradford Worsted Spinning Company, et al.

(Decided May 22, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch No. 1).

1. Corporations—Insolvency—Assignment to Creditors' Committee. —Where an insolvent corporation enters into an agreement with its creditors, wherein its personalty, including rents, is assigned to a creditor's committee, and the preferred and general creditors are given first and second mortgages respectively, evidenced by bonds, on the company's plant; and in the agreement it is specified that the personalty of the company, including the rents accruing from the leasing of its premises, shall be applied (1) to certain specific expenses, and (2) to the bond holders pro rata, it is clear that claims confessedly coming under the first class must be paid before the mortgage bond holders have any interest in the rents. Nor could the receivers' waiver upon behalf of the bond holders have any effect upon the prior claims mentioned above.

2. Corporations—Creditor's Committee—Telegram Relied Upon as Contract.—Appellant, in this case, cannot rely upon a telegram sent by a majority of the committee of creditors as a contract of rental at a certain price because appellant knew they had no authority to make such a contract at the time the telegram was received.

3. Corporations—Receivers—Estoppel.—Where in an order of court its receivers are directed to receive less than the whole amount claimed to be due from a debtor, but not in full satisfaction of the claim, and the order reserves for further adjudication the question of the debtor's liability for the disputed portion of the claim against it, neither parties to the action, nor their privies

are estopped thereby thereafter to assert right to the disputed amount.

4.  Corporations—Disposition of Assets—Election.—Where there are two separate funds, each liable, plaintiff has the right to elect which fund he will proceed against and the defendant, objecting to the action on the ground that plaintiff either could or should have proceeded against the other fund, cannot defeat the right of plaintiff to subject the fund against which the action is directed if he fails to bring the other fund into court, whatever might be his rights with both funds in court.

WEHLE & WEHLE for appellant.

HUMPHREY, MIDDLETON & HUMPHREY and BASKIN & VAUGHAN for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The Bradford Worsted Spinning Company, a corporation engaged in the manufacture of yarns in the city of Louisville, became insolvent and on October 9, 1913, executed an agreement with its creditors, consisting of two classes, preferred and general. The preferred creditors held claims amounting to $97,000.00, and the general creditors held claims amounting to $160,000.00. The agreement placed in the hands of a creditors' committee, composed of Messrs. Oscar Fenley, Ben Rosenbaum and Sidney Davis, the plant of the company with authority to lease same, and collect the rents, and it assigned to this committee the personal property of the company, including rents, to be administered by them for the benefit of the creditors in a way therein specified. By the terms of the agreement a first mortgage on the plant was to be executed to a trustee for the benefit of the preferred creditors and a second mortgage for the benefit of the general creditors, and provided that the bonds evidencing these mortgage debts were to become due upon default in payment of interest. In compliance with this agreement the mortgages and bonds were executed and delivered, and the plant was rented by the committee to the American Woolen Company.

The agreement, in defining the powers of the committee to lease the plant, provided that they should lease it for a period of six months ending July 1, 1913, at $1,500.00 per month, and for a second period of six months ending December 31, 1913, at $1,250.00 per month, and that "at the expiration or cancellation of said lease same may be renewed or a new lease executed should the com-

mittee unanimously agree thereon, and any disposition of the leased premises shall be subject to the control of said committee.''

The lease executed by the committee, under this authority, to the American Woolen Company, provided, by section 12, as follows:

''This lease may be extended by the lessee for a further period of six months ending December 31, 1913, and at a rental of $1,250.00 per month, provided written notice thereof shall be given by the lessee to the lessor on or before May 31, 1913. The lessee may continue occupancy of the premises at said rental of $1,250.00 per month after December 31, 1913, provided however that such tenancy may be terminated by sixty days' notice from the lessee.''

In December, 1913, the lessee sought to obtain an extension of the lease at a reduction from $1,250.00 to $750.00 per month, but the committee decided that its powers were exhausted in the lease executed, and Mr. Fenley, one of the committee, wrote the following letter to the lessee:

''Again referring to your letter of Dec. 2nd, will state that the Commitee is of the opinion that it has no right to extend the lease of the Bradford Mill for a further period. The only thing that we can suggest in reference to it is that you may exercise your right of occupancy under the terms of the lease.

''It is our opinion that the Committee's authority is limited by the agreement with the Bradford creditors, and until the creditors give the Committee further authority it can do nothing.''

On December 26, 1913, Ben Rosenbaum and Sidney Davis, the other two members of the committee, sent the lessee the following telegram in response to its offer addressed to Mr. Davis to rent the premises after December 31, 1913, at $750.00 per month:

''Insofar as the undersigned have the right as majority members of the Liquidation Committee, and speaking for the first mortgage bondholders, who this day held a meeting and considered the matter, we will accept your proposal to continue in possession of the premises of the Bradford Worsted Spinning Company after January 1st, 1914, on terms set forth in your recent letter delivered to Sidney Davis.''

Appellant continued to occupy the leased premises during the months of January, February and March, 1914, and its first contention is that for these three months

it is liable for rental at $750.00 per month, while appellees contend that for that period it is liable for $1,250.00 per month. It will have been noticed that the committee had no authority to rent the premises beyond December 31, 1913, except by unanimous consent, and that the only authority claimed by appellant for holding the premises after that date is contained in the telegram, to it from two of the committee, of December 26, 1913, in which appellant is warned that any right therein attempted to be conferred is limited to whatever authority had been vested in the majority members of the committee, except insofar as the first mortgage bondholders were concerned. It is, therefore, apparent that this telegram could not bind anyone except the first mortgage bondholders, and that any rights of other creditors were not thereby affected.

The agreement of October 9, 1912, provides:

"The rentals accruing under said lease are hereby assigned to and are to be collected by the Committee of Creditors hereinafter named and distributed by them as in this contract provided."

And it is further provided in the agreement that the personalty assigned to the committee, including the rents, should be applied (1) to the payment of the following expenses incident to the settlement of the company's affairs:

| | |
|---|---:|
| To Gifford & Steinfeld, Attys., petitioning creditors in bankruptcy proceeding | $650.00 |
| Court costs | 36.00 |
| Helm Bruce for preparing mortgages | 500.00 |
| Taxes and insurance (not ascertained) | ———— |
| Cost of maintaining and preserving the property (not to exceed per month) | 50.00 |
| Expenses incurred by committee in resisting demands made against the company (not ascertained) | ————" |

And (2) to the first mortgage bondholders pro rata. From which it will be seen that the bondholders had no interest in these rents until after the expenses of the committee in maintaining and preserving the property and in resisting demands made against the company were paid. As the claims sought to be recovered herein are confessedly under the last classification of expenses incurred by the committee, it is obvious that until these claims are paid the first mortgage bondholders have no interest in the rents, their mortgages covering only the plant itself.

Upon default in the payment of interest to the mortgage bondholders, as provided for, they brought a suit of foreclosure for the sale of the mortgaged property, and the following order was entered in that action on April 23, 1914:

"And it being represented to the court by said receivers that a controversy exists between them and the said American Woolen Company on the question whether the latter was during the months of January, February and March, 1914, a tenant of said property at the monthly rental of $1,250.00 or of $750.00, the said receivers are hereby authorized and directed to receive from said American Woolen Company rent for said three months at the rate of $750.00 per month, without thereby prejudicing their right to claim rent for said three months at the rate of $1,250.00, and to agree with said American Woolen Company that the litigation over the said question be postponed until after a sale of the rented premises, the time between such agreement and the said sale not to run against the parties claiming said higher rent, nor in favor of said American Woolen Company.

"And it appearing that before January 1st, 1914, all the holders of first mortgage bonds of the said Bradford Worsted Spinning Company consented as to their interests that the American Woolen Company do occupy the said premises from and after that date at a monthly rental of $750.00 per month and that the said American Woolen Company continued to occupy said premises during said months, relying upon the said consent of the said holders of first mortgage bonds, and that in consequence of said consent the holders of first mortgage bonds have waived any and all rights to exact a higher rent than $750.00 for and during the said months of January, February and March, 1914, and it is ordered that the receivers in their lease to said American Woolen Company do also waive any rights to exact a higher rent than $750.00 per month for said three months if the rent above $750.00 be adjudged to be owing by said American Woolen Company and would go to said holders of said first mortgage bonds."

In pursuance to that order the receivers leased to appellant the company's plant from and after April 1, 1914, and therein stipulated with reference to the rents due for January, February and March as follows:

"2. The said Receivers will receive, and the American Woolen Company will pay to them twenty-two hun-

dred and fifty dollars ($2,250.00) for rent—but not in full of the rent—for said premises for the months of January, February and March, 1914.

"3. The Receivers claim that the rent due for said three months is $3,750.00 or $1,500.00 more than the said $2,250.00, which claim the American Woolen Company denies. It is agreed that the litigation over this dispute was postponed until after the sale of said plant and other assets of the Bradford Worsted Spinning Company without prejudice to either party.

"4. Should it appear that the aditional rent of $1,500.00 claimed by the Receivers for the months of January, February and March, 1914, if adjudged to be owing to the Receivers by the said American Woolen Company, would go to the holders of the first mortgage bonds of the Bradford Worsted Spinning Company, then the said Receivers hereby waive the said claim to the said additional rent of $1,500.00."

It is perfectly clear that this lease by the receivers and the court order authorizing it did not, in any way, affect the rental due by appellant for the months of January, February and March, 1914, except to waive the excess over $750.00 a month claimed to be due alike by the creditors' committee and the court's receivers if due the bondholders and left this matter just where it was under the original creditors' agreement, and the lease thereunder by the creditors' committee, the whole matter to be finally adjudicated by the court.

As we have hereinbefore pointed out, these rents did not belong to the mortgage bondholders until after the payment therefrom of the specified expense claims against the creditors' committee, and the receiver's waiver upon the part of the bondholders could not affect the prior claims against this fund, no matter whether such claimants were parties to the foreclosure suit in which the order was entered or not.

The claims involved in the case at bar are fees of attorneys for services rendered to the creditors' committee in maintaining and preserving the property and in resisting claims against the insolvent company. It was brought by Bradford Worsted Spinning Company and Oscar Fenley, as one of the committee of creditors, and as one of the receivers of that company, against the American Woolen Company, to recover the balance of the rent claimed to be due for the months of January, February and March, 1914, and for the application there-

of to the payment of these attorney fees. Ben Rosenbaum, who was one of the creditors' committee, and also one of the receivers, for the insolvent company, and Sidney Davis, who was one of the creditors' committee of the company, declining to join in the action as plaintiffs, were made defendants.

The defendants, by answer, denied knowledge of the rendition of services by the attorneys to the creditors' committee and of the value thereof, and denied that the American Woolen Company owed any rentals in excess of $750.00 per month, paid for the three months involved, and relied upon the telegram of December 26, 1913, from the majority of the creditors' committee as a contract for rental at $750.00 a month, and upon the order of April 23, 1914, in the foreclosure suit, as a waiver of any amount in excess of $750.00 per month, and as an estoppel against the plaintiffs to claim any excess over that amount.

From what we have already said it is obvious that none of these defenses can prevail. The services of the attorneys to the creditors' committee, as well as their value, are established by the proof, as is admitted by counsel for appellant. The rents were set apart by the creditors' agreement for the payment of these expenses before available to the bondholders. So that their waiver is of no avail to the appellant. The order of April 23, 1914, and appellant's lease thereunder expressly reserved the question of the liability of appellant for the excess rent, and it is not, therefore, an estoppel against anyone claiming it is liable for same or a waiver except by bondholders. That appellant cannot rely upon the telegram from a majority of the committee as a contract of rental is equally clear, because appellant knew they had no such authority when the telegram was received. Appellant either held over after December 31, 1913, under the lease executed by all of the creditors' committee or simply held over without any authority; and in either event is liable for rent at the rate of $1,250.00 a month, as provided for by the only valid lease it had. Nor is there any merit in appellant's contention that this action is not properly brought, because under the creditors' contract the creditors' committee were authorized to incur the expense sued for herein, and that committee had the right to bring this suit for the benefit of those who had rendered this authorized service, and under the appointment by the court of the receivers to take charge of the

property they had the right to recover of appellant the balance due for rents, and whether the right of the receivers superseded the right of the creditors to bring the suit is immaterial here because this suit was brought by Oscar Fenley, both as one of the creditors' committee and one of the court's receivers, and the other members of the creditors' committee and the other receivers, declining to join as plaintiffs, are made defendants.

The Bradford Worsted Spinning Company was, of course, interested and had a right to join as a plaintiff. The bondholders were not necessary parties because they had waived any right to insist upon the payment by appellant of the excess rent claimed to be due by the other parties interested. The fact that there was another smaller fund to which plaintiffs might have looked for a partial payment of the claims involved here, did not force them to proceed against that fund rather than this, also liable for the payment. They had a right to elect which fund they would proceed against and appellants, having failed to bring the other fund into court, as they might have done, cannot defeat appellee's right to subject this fund, whatever might have been their rights with both funds in court. 26 Cyc. 927-939; Bank of Kentucky v. Vance, 4 Littell 175.

The judgment of the chancellor being in conformity herewith is affirmed.