1833.

Cudney
v.
Early.

## CUDNEY *vs.* EARLY and others.

Where C. purchased from E. the west half of lot 8 in lot B. in the 22d allotment of Kayaderosseras patent, for which he took a warrantee deed, and C. having, as E. insisted, taken possession of more land than his deed covered, E. commenced an action of ejectment against C. to recover the land in dispute, and in his declaration inserted a count on a demise from his mother ; and on the trial, E. proved the will of his father, the former owner of lot No. 8, by which it appeared that the lot was devised by him to his wife, the mother of E., during her widowhood ; and the counsel for C., on the trial, called upon E. to produce his deed, or the evidence of his title to the premises conveyed by him to C., but E. declined doing so, and a recovery was had upon the count containing the demise from the mother of E. for the whole of the premises in the possession of C. ; upon a bill filed by C., alleging that E. had obtained title to the whole lot subsequent to his father's death, and praying a discovery of his title, that he might produce his title deeds, and that he and his mother might be restrained from taking possession of the premises conveyed by him to C. ; and the conveyance from the mother to E. being admitted by the answer ; the mother was perpetually enjoined from taking possession of any part of the premises recovered in the ejectment suit, or from commencing any suit for the mesne profits thereof ; and costs were refused to E., although it turned out that the strip of land in dispute was not included in his deed to C.

Where one of the lines of a lot was described as running in a particular direction, a certain number of chains and links, to a stake and stones standing in the north-west corner of the east moiety of lot No. 8, and neither the stake and stones, or the place where they originally were, could be ascertained ; *Held,* that the next most certain call, in the deed, was for the north-west corner of the east moiety of lot No. 8 ; which call must prevail over the distance, described in the deed, if they did not agree.

IN 1825, Absalom Early, one of the defendants in this cause, claiming to be the owner of lot No. 8, in lot B. in great lot No. 1, in the 22d allotment of Kayaderosseras patent, sold to the complainant the west part thereof, and executed to him a deed for the same, containing the usual covenant of warranty. The boundaries of the premises were described in the deed as follows : " Beginning at a hemlock stake near a large hemlock stump marked 7, 8, in the east bounds of lot A., and running thence along the same, north 17 deg. west 65 chains, to a hemlock tree marked A. B., standing in the south bounds of the 24th allotment ; thence along the same,

August 6.

north 61 deg. east, 20 chains and 20 links, *to a stake and heap of stones standing in the north-west corner of the east moiety of lot No. 8*; thence south 17 deg. east, 61 chains and 28 links, to a stake and heap of stones; thence south 56 deg. west, 20 chains and 84 links, to the place of beginning; containing 124 acres and ¾ of an acre of land." Shortly after the purchase, Cudney, the complainant, caused the premises to be surveyed; and the surveyor not being able to find the stake and stones described in the deed as the termination of the second course, run 20 chains and 20 links, the distance mentioned in the conveyance, and then run the east line of the premises from that point, parallel with the west bounds of the lot. The grantor being dissatisfied with this survey, and contending that the line had been run too far east, a second survey was made, by the same person; and there was some conversation respecting a compromise and a re-conveyance of the disputed piece of land. The parties however not being able to agree, and the grantor having subsequently contracted to sell the east half of lot No. 8 to E. Early, one of the defendants, an ejectment suit was brought against Cudney to recover back the possession of the disputed piece of land. In that suit separate demises were laid from Absalom and Elijah Early, and from Abigal Early, the other defendant in this suit. Upon the trial of the ejectment suit, the plaintiff's counsel proved that Robert Early, the father of Absalom, was the former owner of the whole of lot No. 8, and that Cudney was in possession of the west part of the lot at the commencement of that suit. He then produced and proved the will of Robert Early, by which it appeared that the testator devised the whole of lot No. 8 to his wife, Abigal Early, during her widowhood. Cudney then produced the deed to himself from Absalom Early, and attempted to prove that it covered all that part of lot No. 8 of which he was in possession. But the court decided, that from the testimony, it appeared the widow was entitled to the whole lot, and that it could not be material to show that the defendant's possession did not extend beyond the boundaries of his deed, unless he could also show that the widow had conveyed her interest in the premises to Absalom Early. The

counsel for Cudney thereupon called upon Absalom Early, and his counsel, to produce the deed, or the evidence of his title to the premises, which he had conveyed to Cudney with warranty. But they declined to do so; and the court thereupon directed a verdict to be found for the plaintiff, on the count containing the demise from Mrs. Early, for all that part of lot No. 8 which was in possession of Cudney, and for the defendant on the other counts of the declaration.

Cudney thereupon filed his bill in this cause, alleging, among other things, that Absalom was the only son and heir at law of Robert Early, and pretended to be the owner of the premises at the time of the conveyance to the complainant; that he had in fact obtained a title for the whole lot subsequent to the death of his father, but that by fraudulently concealing the evidences of his title from the complainant, and withholding them on the trial of the ejectment suit, he had enabled Mrs. Early, who had no title, to recover the whole premises which he had previously conveyed to Cudney. The complainant therefore prayed a discovery of the titles of the several defendants to the premises, and that Absalom Early might be compelled to produce his title deeds for the inspection and use of the complainant; that the defendants respectively might be restrained from taking possession of the lands conveyed to him, or from suing out any execution in the ejectment suit; and for general relief. The defendants, by their answer, admitted that the title to the whole lot was in Absalom Early at the time of the conveyance to Cudney, and that he had subsequently contracted to sell the east half of the lot to Elijah Early, but had not conveyed the same; and they alleged that the ejectment suit was brought to recover the disputed strip of land, which they insisted was not conveyed by the deed to Cudney. They also alleged that the verdict was taken on the demise of Mrs. Early, to save the trouble of litigating the question of boundaries; but without any intention of taking possession of any of the land in the possession of Cudney, other than the narrow strip which was in dispute. Proofs were taken in the cause; and several surveyors were examined as to the location of the premises de-

scribed in the complainant's deed from Absalom Early. The cause was heard on the pleadings and proofs.

*J. Ellsworth,* for the complainant.

*W. L. F. Warren,* for the defendant.

THE CHANCELLOR. The whole controversy in this cause relates to a question of purely legal title ; and the useless expense of the litigation in this court has been produced by the refusal of the defendant Absalom Early to produce the evidences of the title which he had covenanted with Cudney to warrant and defend. If those evidences had been produced, a verdict could not have been given for the plaintiff upon the demise from Mrs. Early ; and the question would then have been fairly presented, upon the demise from Absalom Early, whether Cudney was in possession of any part of lot No. 8, except that which was conveyed by his deed. That question is now presented for decision here, and it must be considered, and decided, before I proceed to inquire what relief the complainant is entitled to in this cause.

The surveyor who first run out the premises for the complainant, acted upon the supposition that if there was no stake and stones, as described in the deed, at the termination of the second course, he must run the whole number of chains and links called for by the conveyance. In this, however, he mistook the proper rule of construction, in reference to this deed ; for there is another boundary called for at the termination of the second course, to which the distance as called for by the conveyance must still yield. The deed calls for a stake and stones, for a distance of 20 chains and 20 links, and for the northwest corner of the east moiety of lot No. 8, as the termination of the second course. A stake and stones being a visible and definite monument, if there was such a monument at the time the deed was given, both of the other calls, which are less certain, must yield to it, if they do not agree therewith. But if no such monument in fact existed at the time of the conveyance to Cudney, or if, by lapse of time or otherwise, it is now impossible to ascertain the original location thereof, the call must be resorted to which is the most definite and certain

of those that remain. That, in the present case, is the call for the north-west corner of the east moiety of lot No. 8; and to this the distance must yield, if they do not agree. Green testifies that when he subdivided the lot, in 1814, he placed a stake and stones in the centre of the north line thereof, and run a line therefrom, parallel to the east and west lines. If the east and west lines of the lot had been of the same length, this stake and stones would have been at the north-west corner of the east moiety of the lot, and would be the termination of the second course in this deed, although no such stake and stones existed, in April, 1825, when this conveyance to Cudney was executed. It is up to this point, as I understand the witnesses, to which the defendants claim; which point is about three rods west of the complainant's fence. But it appears by the testimony of Green, as well as from the several diagrams and from the descriptions in the deeds which are in evidence, that the west line of lot No. 8 is longer than the east line. This therefore would carry the north-west corner of the east moiety still further from the complainant's fence, which is erected upon the line run by Lapham. And if the complainant had not been so fortunate, in this cause, as to have it established, by one of the defendants' witnesses, that the stake and stone which were planted by Green, in 1814, were still remaining, at the same place, at the time of Cudney's purchase, in 1825, I should have been compelled to declare that the premises described in the deed were to be located by a line which would divide lot No. 8 into two equal parts or moieties. As there is no reference in the deed to the west part of the lot, as conveyed to and occupied by Van Natter, in 1814, and as Absalom Early owned the whole lot at the time of his conveyance to Cudney, the actual survey which was made by Green, at the time of the conveyance to Van Natter, is only material in reference to the fact sworn to by Elijah Early, junior, that a part of the stake and the stones placed at the north-east corner of Van Natter's lot, actually remained there at the time of the conveyance to Cudney. That fact being established, I must presume the conveyance had reference to that stake and stones as the termination of the second course; and both of the oth-

er calls in the deed must give way to that. The deed, there-fore, must be located by bounding the premises conveyed, by a line, on the east, running from that stake and stones, or the place where they once were, parallel to the west line of the lot; which will correspond with the division line as run by Green in 1814. I do not think there was such an acquies-cence on the part of Absalom and Elijah Early in the survey of Lapham, as to make his location of the premises conclu-sive upon their rights; especially when it turns out that he was clearly under a mistake as to the principles upon which the location was to be made. He was not called upon to de-cide a question of law, but to locate the premises according to the deed; and Absalom and Elijah Early acted on the be-lief that he had done so.

These questions being settled, it remains to be seen wheth-er the complainant is entitled to any, and if any, to what re-lief in this suit. By the verdict in the ejectment suit, Mrs. Early recovered the whole of the complainant's farm, togeth-er with the disputed strip of land, which strip it now appears belonged to her son. Under that recovery, she has the right, at law, to take possession of both; and to recover the mesne profits of both, for the time Cudney has been in possession. And a recovery of the mesne profits of the disputed strip of land by her would not protect him from a similar claim on the part of the real owner of that land. She must therefore be perpetually enjoined from taking possession of any part of the premises recovered in the ejectment suit, and from bring-ing any suit to recover the mesne profits thereof. But as it now appears that the disputed strip of land belongs to the defend-ant Absalom Early, the complainant must give up the posses-sion thereof to him, or to Elijah Early, without the expense of further litigation relative thereto; and without prejudice to the right of Absalom Earley, or of Elijah Early, to prosecute him for the mesne profits of the disputed strip, if they shall be advised so to do. The defendant in the ejectment suit would have been obliged to pay the costs, if Absalom Ear-ly had produced his title deeds, and taken his verdict, for the disputed piece of land, on his own demise, according to his right as now established. Cudney therefore has no valid

claim to recover back the costs he has paid in that suit. But if he had succeeded here in showing himself to be the owner of the land in dispute, he would have been entitled, under the covenants of warranty in the deed, to an indemnity against the whole of the costs of that suit.

As the whole of the expense of the litigation in this court has arisen from the inequitable proceedings of the defendants in the ejectment suit, whereby Cudney was deprived of the opportunity of having his rights litigated and determined in the court of law, I cannot give them costs, as against him, upon the litigation here. He also had a right to come here for the purpose of shielding himself against the recovery for that part of his possession which was covered by his deed. But as he has failed upon the main question in litigation here, I shall not give costs in his favor against any of the defendants. The evidences of the title of Absalom Early to the west part of the lot must, if the complainant requests the same, be deposited with the clerk of this court residing in the fourth circuit, for the protection of the complainant's title.