McMAHAN v. GREEN.

12 71
117 574

1. When a *lien* has attached on personal property, by the delivery of a *fieri facias* to the sheriff, which during the continuance of the *lien*, is removed by the defendant in execution to another State, and sold, it may be levied on and sold, by an *alias* execution, if brought back again to this State.

2. *Quere*, would not the foreign purchaser acquire a good title by a purchase at a judicial sale, or would not the remedy be lost, if the property had remained long enough in the foreign country, for the statute of limitations to bar an action for its recovery.

Writ of Error to the Circuit Court of Barbour.

THIS was a trial of the right of property under the statute, in which the plaintiff in error was the plaintiff in execution, and the defendant the claimant. The property in question is a female slave, levied on to satisfy a *fieri facias* against the goods and chattels, &c., of William F. Evans and others. An issue was made up and submitted to a jury, who returned a verdict in favor of the claimant, and judgment was rendered accordingly. From a bill of exceptions sealed at the trial, it appears that the slave was removed by Evans, from Pike county, in the fall of the year 1839, while a *fieri facias*, (of which the one levied was a regular, and immediate *alias*) was in the hands of the sheriff of the county last named. These facts were disclosed to the claimant at the time he purchased the slave in Florida of Evans, whither the latter had removed her. The claimant after his purchase, brought the slave to Barbour county, where she was levied on by

the plaintiff's execution. The court charged the jury, that under these circumstances, the lien of *fi. fa.* did not re-attach upon the slave being brought back into this State, and that the title acquired by the claimant, was independent of any execution liens in this State.

J. E. BELSER and J. BUFORD, for the plaintiff in error.— The delivery of the *fieri facias* to the sheriff of Pike, operated a lien upon the slave, and could not be affected by her removal to another county, or even without the limits of this State, where, as in this case, the lien has been followed up with all legal diligence. The effect of the lien is to give to the plaintiff a right which cannot be divested by the defendant without his consent, and to take from the latter the power of disposing of the property so as to defeat a satisfaction of the execution. [1 Ala. Rep. 678, 364; 7 Id. 632; Gilp. R. 101; 1 Mason's Rep. 321; 1 Pet. Rep. 443; 10 Id. 176; 1 Johns. Rep. 479; 2 Dana's Rep. 408; 3 Id. 213; 4 Bibb, 532.] It is shown by these citations that although a special property in the goods of the defendant in execution, do not vest in the sheriff, unless a levy has been made, yet the delivery of the execution to the officer imposes a lien which the debtor cannot, by any act of his, defeat. The jury might have inferred from the evidence, that the claimants purchase was made to defeat or delay creditors, and void, under the statute of frauds. If this be so, the charge of the court was erroneous, in assuming the reverse as a legal conclusion.

J. COCHRAN, for the defendant in error. The lien of an execution is not dependent upon a contract, but is given by law; and it is the fact of the personalty being in the county to which the *fieri facias* issues that causes the lien to attach. [8 Port. Rep. 147; 1 Ala. Rep. 678.] If property is merely removed to another county after the lien commences, it is *suspended*, and may be made operative by suing an execution to that county. [7 Ala. Rep. 632.] But when the thing is removed beyond the jurisdiction of the State, all process is inoperative against it, and if the defendant there sells it for a

valuable consideration, the lien is forever gone, though it be brought within this State. The claimants knowledge that the property had been removed from Pike county to Florida, and that the slave, previous to her removal, was subject to the lien of an execution, can have no effect upon the claimant's title—such knowledge does not warrant the implication of a fraud. A legal title vested in the claimant by his purchase—there having been no actual levy of the plaintiff's execution previous to the removal, which was necessary to divest the defendant's property. [1 Ala. Rep. 359.]

COLLIER, C. J.—By the act of 1807, "concerning executions, and for the relief of insolvent debtors," it is enacted, that "No writ of *fieri facias*, or other writ of execution shall bind the property of the goods against which such writ is sued forth, but from the time that such writ shall be delivered to the sheriff, under-sheriff, coroner, or other officer to be executed ; and for the better manifestation" of the time of delivery, such sheriff, &c. shall indorse on such writ " the day of the month and year when he received the same." [Clay's Dig. 208, § 41.] This statute, it has been often said, gives to a *fieri facias*, a lien upon the goods and chattels of the defendant, that may be within the county, while it is operative and in the hands of the officer. And in Hester, et al. v. Keith & Kelly, 1 Ala. Rep. 316, it was held, that the act in requiring the indorsement of the reception of an execution, must be regarded as directory, and its non-observance by an officer in whose hands an execution is placed, cannot prejudice a plaintiff. The lien attaches as soon as the execution is received, and the noting upon it the day of the receipt, is only intended to evidence the fact ; and it is competent to show the time of the delivery by extrinsic proof.

Where the lien of a *fieri facias* attaches upon goods and chattels, it will not be lost by their removal to another county—not even in favor of a junior *fi. fa.* issued to the latter county, if an *alias* execution has regularly issued as directed by the act of 1828. [Hill v. Slaughter, 7 Ala. Rep. 632; See also, 2 Murph. Rep. 353 ; 2 Hawks' Rep. 341.]

A lien, it is said, is neither a *jus ad rem*, nor a *jus in re*, it only confers a right to levy the *fi. fa.* on the particular

10

chattel to the exclusion of other adverse interests arising sub-
sequent to the lien's attaching ; and when the levy is actual-
ly made, it operates retrospectively, so as to cut off interme-
diate incumbrances. [Meany v. Head, 1 Mason's Rep. 319;
Conard v. Atlantic Ins. Co. 1 Pet. Rep. 386 ; Jones v. Jones,
1 Bland's Rep. 448 ; Arnold v. Bell, 1 Hayw. Rep. 396 ;
Ingles v. Donaldson, 2 Id. 57 ; Williams' adm'r v. Bradley,
Id. 363 ; Payne v. Drew, 4 East's Rep. 523 ; 1 Smith's R.
170.] A lien is a tie, hold, or security, upon goods which a
man has for some particular purpose—he may hold it until
the purpose is satisfied, or the lien is lost, or in some manner
waived. [United States v. Barney, 2 Hall's Law Jour. 128.]
The prior lien is entitled to prior satisfaction, unless it be in-
trinsically defective, or displaced by some act of the party
holding it, which shall postpone him at law or in equity ;
and mere delay, it is said, is not sufficient for that purpose.
[Rankin v. Scott, 12 Wheat. Rep. 507 ; see also, 3 Harring-
ton's Rep. 37 ; 4 Harrison's Rep. 166.]

In South-Carolina it has been held, that executions bind
the property throughout the State, from the time they are
entered in the sheriff's office. Yet the plaintiff may lose his
priority by delay. [Woodward v. Hill, 3 McC. Rep. 241,]
So, in Porter v. Cocke, Peck's Rep. 30, it was decided that
although a judgment was a lien upon the lands of the defend-
ant, this lien may be lost ; and a contract to stay execution
until the next term will suspend it with regard to other judg-
ment creditors. [See also, 4 Dall. Rep. 450 ; 1 Watt's R. 9.]

Whether the stern principles of law or international comi-
ty require one country to recognize the preferences or priori-
ties of creditors in another, as established by the legislation
of the latter, is perhaps a question about which foreign ju-
rists are not fully agreed. But it may be stated as the result
of the doctrine taught by most of them, that the proper fo-
rum to decide upon all questions of the preferences and pri-
orities of creditors, is the place of the domicil of the debtor ;
and that the law of that place, and not the law of the place
of the contract, is to govern in all cases of such priorities and
preferences, in respect to moveables situated in his place of
domicil. But as to moveables situate elsewhere, as well as
to immoveables, the lex rei sitae is to govern. A preference

arising solely from the authority of the law, has no effect upon property not subjected to the law maker, when the controversy respects the interest of third persons, or of other creditors, who have not contracted in the place, the laws of which give the preference. [Story's Confl. of Laws, 270.] *Again,* whenever the *lex loci contractus* and the *lex fori* as to conflicting rights acquired in each, come in direct collision, the comity of nations must yield to the positive law of the land. *In tali conflictu magis est, ut jus nostrum, quam jus aliorum servemus.* [2 Kent's Com. Lect. 39.]

Upon the general principles as to the operation of contracts, and the rule that moveables have no locality, it is said that the privilege, hypothecations and liens of creditors ought to prevail over the rights of subsequent purchasers and creditors in every other country. That having once attached rightfully *in rem,* they ought not to be displaced by the mere change of local situation of the property. [Story's Confl. of Laws, 335, § 402.]

The principles we have stated as sustained by judicial decisions, or the opinions of elementary writers, furnish the most apt analogies for the decision of the case at bar of any we have been able to find. From these it follows, that the delivery of a *fieri facias* to the sheriff, does not invest the plaintiff in execution with a right to the personal property of the defendant, against which it is sued forth. It merely gives to the plaintiff a lien paramount to all junior execution creditors, if it is promptly enforced, and if the debtor incumbers or sells it, the incumbrancer or purchaser will take it subject to the lien.

We have seen that the removal of chattels from one county to another, will not deprive a party of the lien of an execution which attached in the former, if an *alias fi. fa.* has regularly issued as directed by the statute of 1828. This statute adjusts the priorities of execution creditors, and declares, that " if a term shall not have elapsed, and an *alias* shall be delivered to the sheriff before the sale of property under a junior execution in favor of another creditor, the lien shall continue, notwithstanding the *alias* may not have been delivered until after such junior execution; but if such *alias* shall not be delivered until after the sale under such junior

execution, the lien of the latter shall prevail." This dili-
gence, it will be observed, is necessary to keep alive the lien,
where there are other creditors who are seeking to subject the
debtor's estate to the satisfaction of their executions. But
after the lien has once attached, the plaintiff cannot be re-
quired to employ the same diligence in order to continue it
against the defendant, or a purchaser from him. In Claggett
v. Foree, 1 Dana's Rep. 428, it was held that the temporary
removal of property would not free it from a lien which had
been acquired by the delivery of a *fi. fa.* to the sheriff. If
without connivance or fault on the part of the plaintiff in ex-
ecution, the defendant removes his goods from the State, the
lien would be suspended during the time they were abroad,
but upon their being brought within it again, either by the
defendant or a purchaser from him, the lien would revive and
relate back to the time when it first attached. This conclu-
sion seems to result from the proposition that it cannot be lost
without fault on the part of the plaintiff, or unless there be
such a want of diligence as gives a prefernce to a junior ex-
ecution. The fact that the property had been sold while it
was abroad, by the defendant, cannot destroy the lien; for
he has no right to make an unincumbered title to it while
the execution remains unsatisfied, and its lien unimpaired.

As there is not even *jus ad rem,* perhaps the property
could not be pursued into a foreign jurisdiction; to authorize
proceedings there, it is possible that there should be a levy,
which gives *jus in re.* But however this may be, the con-
clusion we have expressed will not be affected. If a sale was
made abroad, under judicial process against the defendant in
execution, we incline to think that the title of the purchaser
under that process would prevail against the lien of the *fi. fa.*,
if the property was removed into this State. But this would
depend upon the effect of the foreign law, and would be al-
together different in principle from the case of a voluntary
sale. So if the property should remain abroad a sufficient
length of time for the statute of limitations to bar an action
of detinue, it is quite probable that the purchaser from the
defendant might invoke the statute, and thus defend his ti-

tle.    But the case of the claimant, as presented by the record, is unassisted by any of these circumstances, which it is intimated might possibly defeat the plaintiff's lien.    It presents the naked question, whether, if a lien attaches upon chattels, in virtue of a *fi. fa.*, and they are removed from the State and sold by the debtor, and afterwards brought into the State, can they be seized and sold under an *alias fi. fa.* issued under the same judgment, so as to defeat the title of the foreign purchaser.    Upon this point our opinion has been expressed. The judgment is consequently reversed, and the cause remanded.