# DONALD & CO. *vs.* HEWITT.

[BILL IN EQUITY TO ENFORCE FOREIGN LIEN ON STEAMBOAT.]

1. *Conflict between foreign and domestic liens on steamboat.*—A lien on a steamboat, created by a foreign statute, for work, materials, &c., cannot operate to defeat a lien acquired by attachment or libel in this State, where the boat had been brought, before the foreign lien was set up.

2. *Difference between statutory and contract liens.*—A contract between a workman and a part owner of a steamboat, providing that the former, having constructed and erected an engine on the boat, "shall retain a special lien on said boat and engines until the notes (given for the price) are paid," creates a lien independent of statutory provisions conferring liens on workmen and material-men.

3. *Meaning of term lien.*—Whatever may have been the import of the word *lien* at common law, as applicable to cases in which a party had a right to retain the possession of property until a demand was satisfied, it has acquired in our law a more extended signification, and may include an equitable mortgage, where there is no right to retain possession of the thing itself.

4. *Equitable mortgage.*—A contract, under seal, between a workman and one of the part owners of a steamboat, by which the former agreed to make and put up an engine on the boat, and the latter agreed to pay him a stipulated sum in cash, and to give three notes or acceptances for another sum, payable four, six, and eight months after date ; and by which it was stipulated, that, for the better security of the payment of the said notes, the workman should retain a special lien on said boat and engine until the notes were paid,—creates an equitable mortgage in favor of the workman, which is not dependent for validity on his retention of the possession of the boat.

5. *Conflicting liens of equitable mortgage and attachments.*—The lien of an equitable mortgage on a steamboat, created by contract in a foreign State, is superior to that of an attachment or libel levied on the boat here, at the suit of creditors who are not entitled to protection as innocent purchasers for valuable consideration without notice.

6. *Proviso to registration law, respecting property removed from another State.*—The statute of 1823, (Clay's Digest, 255, § 4,) postponing the lien of an unrecorded mortgage in favor of creditors without notice, contains an express exception as to persons " who shall have removed from another State ; " consequently, it has no application where the mortgagee files a bill to enforce his lien within twelve months after the property is brought into this State.

7. *Kentucky registration statute construed.*—The registration law of Kentucky, relative to " deeds of mortgage or deeds of trust," as pleaded in this case, applies to an equitable mortgage, which merely creates a charge on property.

8. *Validity of mortgage not affected by changing form of security, or blending new debt.*—The validity of an equitable mortgage, created by contract, is not

affected by the fact that the notes actually given did not correspond with those contemplated when the contract was made, or that they were made to include an additional indebtedness not provided for by the contract.

9. *Authority of partner and part owner.*—One partner has authority to incumber the entire interest in the personal property belonging to the partnership, for the security of its debts; but the mere fact that two persons jointly own a steamboat, does not constitute them partners in the boat, nor does it confer any power on one, in the absence of a special authority from the other, to bind the entire interest in the boat by a contract for work or materials.

10. *What debts are included in contract lien.*—A lien on a boat for a specific amount, created by contract between the owners and a workman, cannot be held to include a debt incurred for additional work outside of the contract, when it is not alleged that such additional work was done on the faith of the lien, or that there was an agreement between the parties that the lien should be enlarged to include the price of such work.

11. *Endorsement on enrollment of steamboat construed to create lien.*—An endorsement on the enrollment of a steamboat by the inspector of customs, made by the directions of the owner, declaring that "S. & H. hold a lien on said boat to secure the payment of six drafts," (given for work done on the boat,) " and this endorsement to be continued on all enrollments issued for the boat, until all the above drafts are fully paid, and S. & H. fully satisfied ;" by which memorandum, it was averred, the owner "acknowledged, admitted, declared and gave a lien " for the entire indebtedness secured by the drafts, part of which was already secured by a special lien on the boat created by prior contract,—is the declaration of a valid trust, which a court of equity will sustain and enforce. (WALKER, J.. *dissenting*, held, that the endorsement was not designed to evidence the declaration of any new trust, but was simply intended to give notice of a pre-existing statutory lien.)

12. *Writing held insufficient to create contract lien.*—A written instrument, signed by the master and principal owner of a steamboat, and filed with the boat papers in the office of the inspector and collector of customs ; acknowledging an indebtedness on account of certain drafts which were given for work and materials for the boat, and adding, " the mortgage or lien to continue on the boat-papers, as security for these drafts, until finally paid and released,"—does not create or evidence a contract lien on the boat, but is merely intended to give notice of the existence of a statutory lien.

APPEAL from the Chancery Court at Montgomery.

Heard before the Hon. WADE KEYES.

THE original bill in this case was filed by Schnetz & Hewitt, of Louisville, Kentucky, on the 3d August, 1850. Its object was to enforce and assert a lien on the steamboat *J. Morrisette*, then lying at the wharf in Montgomery ; to enjoin further proceedings under certain attachments and libels, which had been levied on said boat, in favor of sundry creditors of the boat and her owners ; to have the complainants' lien declared superior to that of

the other creditors, and for a sale of the boat to satisfy their demand. The complainants' lien was created by a contract entered into between themselves and Thomas Moore, who owned seven-eighths of the boat; the remaining one-eighth belonging to one Jackman. This contract was made an exhibit to the bill, and was as follows:

"Louisville, July 6, 1849.

"This memorandum and article of agreement, made and entered into this day, by Schnetz & Hewitt, of the first part, and Thomas Moore, of the second part, (all of the city of Louisville, and State of Kentucky,) *witnesseth*, that the said Schnetz & Hewitt covenant and agree, and by this article bind themselves, to make and put up on board a steamer at the wharf at Louisville, for the said Moore, two engines," &c., (which, with the other work to be done by them, is particularly described,) "all of said work to be completed on or before the 22d day of October, 1849, or as soon after as the boat being ready on the 1st October, say twenty-five days after the boat shall be ready to receive the engines. For and in consideration of the fulfillment of the foregoing contract by said Schnetz & Hewitt, the said Thomas Moore covenants and agrees, and by these presents binds himself and the other owners of said boat, to pay, or cause to be paid to the said Schnetz & Hewitt, the sum of sixty-eight hundred dollars, in this manner—viz., one-half cash during the progress of the work, and the balance in three payments, in equal notes or acceptances made by said Moore, and due four, six and eight months after drawing, bearing interest, and payable in New Orleans. And for the better security of the payment of said notes, said Schnetz & Hewitt are to retain a special lien on said boat and engine, until the notes are paid. In witness whereof, the parties do hereunto set their hands and seals, this 7th July, 1849.

THOMAS MOORE,
SCHNETZ & HEWITT."

The bill alleged, that the complainants performed all the work stipulated in their said contract, "and delivered the same to the said Moore, who acknowledged their debt,

paid a part of it, and gave them drafts varying from the original contract; " that this change in the drafts was not intended to affect their lien under said contract; that on the 1st December, 1849, Moore took out of the custom-house at Louisville an enrollment ot the steamboat, according to the requisitions of the acts of congress, " and, on the 8th December, again acknowledged `and recognized complainants' lien on said boat, for the amount of the demands then due them, by a written memorandum endorsed on said enrollment, and also admitted the correctness of their demands existing at that time; " which memorandum was made an exhibit to the bill, and was as follows :

"Custom-House, Louisville, Dec. 8th, 1849.

"By direction of Thomas Moore, master of the steamboat *J. Morrisette*, Messrs. Schnetz & Hewitt hold a lien on said boat, to secure the payment of six drafts, drawn by them, and accepted by said Thomas Moore, in all amounting to the sum of $4,342 57—one draft dated November, 1849, payable in five months, for $700; draft dated November 28, 1849, payable in six months, for $800; draft dated December 30, 1849, payable in eight months, for $649 26. And this endorsement is to be continued on all enrollments issued for the boat, until all the above drafts are fully paid, and Schnetz & Hewitt are fully satisfied.                                    R. C. THOMPSON,
                                        Surveyor and Inspector."

The bill further alleged, that Moore still owed the complainants all the debts enumerated in this memorandum, and was liable for their payment, " in connection with the aforesaid lien ; " that the said steamboat had been employed during the year on the Alabama river, and, while lying at the wharf in Montgomery, in May, 1850, had been seized by the sheriff under several attachments and libels, all returnable to the circuit court of Montgomery ; that all of these attaching and libeling creditors were citizens of Louisiana, except French & Co., who resided in Indiana ; and that all of their claims were inferior and subordinate to the complainants' lien.

The bill was afterwards amended, by the addition of

35

the following averments: That by the law of Kentucky, where the contract between complainants and said Moore was entered into, and where all the work was performed, "the said agreement gave them a lien on said steamboat for the payment of the money that might become due to them on account of the performance of said work and the furnishing of said materials;" that the statutes of Kentucky did not require that this agreement should be recorded, in order to give it validity as between the parties themselves, or against subsequent creditors and purchasers from Moore; that by the laws of Kentucky, "upon the performance of said work and the furnishing of said materials under said agreement, complainants acquired and obtained a lien on said steamboat for the amount due to them on account of said work and materials," and said boat became charged with the payment of their debt; that by the written memorandum above mentioned, which was endorsed on the enrollment of the boat, "said Moore acknowledged, admitted, declared and gave a lien on the said steamboat, for the payment of the said several drafts therein specified;" that the laws of Kentucky did not require that this memorandum should be registered, but a duplicate copy of it was kept on the boat, open to the inspection of all persons dealing with her; and that the boat had not been in Alabama twelve months when the bill was filed.

A second amendment to the bill alleged, "that by the statute law of Kentucky, which was of force on the 1st July, 1849, it was enacted and provided, among other things, 'that all the officers of steamboats, except the captain, also the firemen and owners of firemen, together with the marines and other hands on all steamboats, shall have a lien for their wages on the boat, her engine, tackle and furniture, and a preference over any and all other debts due from the owners; and that steamboats, built, repaired and equipped within that State, shall be liable for all debts contracted by the master, owner, or consignee thereof, on account of work, supplies, or materials, furnished by mechanics, tradesmen, and others, for and on account of the building, repairing, furnishing, or equip-

ping such steamboats, their engine, tackle and furniture, and shall have preference over every and all other debts due from the owners, except for the wages due to the officers and crew as aforesaid; and that the lien given by said act shall not be enforced against a purchaser without actual notice, unless suit be instituted within one year from the time the cause of action accrued; but it shall be lawful for mechanics, tradesmen, and others having liens, to have notice thereof endorsed on, or attached to the enrollment of the vessel, which endorsement shall operate as actual notice of such liens.' "

French & Co. answered the bill, admitting notice of the complainants' lien, and insisting that their own lien was of equal degree. They also filed a cross bill, alleging, as the answer also averred, that they made a contract with Moore, on the 4th July, 1849, in Indiana, for work and materials towards the building of said boat; that they performed all the work according to the stipulations of their contract, for which Moore paid them partly in cash, and gave sundry drafts or acceptances for the residue of the price; "that by the statute law of Indiana, where said work was done, they had a lien on said boat, her engines, furniture and apparel, for the payment of said work and materials;" that it was the intention of the parties that this lien should be continued, and should not be waived or lost by the giving of the bills of exchange; that on the 2d January, 1850, "in aid of said lien, and as a security for the payment of the same debt, said Moore executed and delivered to them, at New Orleans, a writing in the nature of a mortgage on said boat, a copy of which was then and there endorsed on the enrollment of said boat," and in which the debts were alleged to be incorrectly described; which instrument was made an exhibit to the answer and cross bill, and was in the following words:

"Be it known, that I, Thomas Moore, master and owner of seven-eighths of steamboat called J. Morrisette, do hereby acknowledge to be indebted unto Messrs. Henry French & Co., of Jeffersonville, Indiana, the just sum of $5,348 50, payable in my three acceptances on

J. T. Donald & Co., of New Orleans, and accepted by them, payable to the order of Henry French; said drafts dated December 1, 1849, and payable as follows—one acceptance, payable at ninety days from date, for the sum of $660; one acceptance, payable five months from date, for $2,562 50; and one payable twelve months from date, for $2,120; making together the aforesaid sum of $5,348 50—the above obligations being given for materials and workmanship on the boat-building; the mortgage or lien to continue on the boat-papers, as security for these acceptances, until finally paid and released by French & Co. This done and passed in the city of New Orleans, the 2d January, 1850.        THOMAS MOORE."

The other defendants answered, denying notice of the complainants' lien, insisting on the superior liens of their several attachments, pleading the registration statutes of Kentucky, and demurring to the bill for want of equity.

On final hearing, on pleadings and proof, the chancellor held, that the complainants were entitled to be first paid, out of the proceeds of the sale of the boat, for their entire debt; that the claim of French & Co. was next entitled to precedence; and that the residue of the funds should be applied to the satisfaction, *pro tanto*, of the debts of the attaching creditors.

From this decree the attaching creditors appeal, and here assign the same as error.

J. A. ELMORE, and T. H. WATTS, for appellants: 1. When parties use a term in a contract, which has a definite, technical, legal meaning, it must be considered to have been used in its technical sense, unless it clearly appears to have been used in a different sense.—Mechanics' Bank v. Cook, 4 Pick. 405; State v. Smith, 5 Humph. 349; McFarland v. Wheeler, 26 Wendell, 467; Sawyer v. Fisher, 32 Maine, 28.

2. A lien is neither *jus ad rem*, nor *jus in re*, but a mere right to hold property belonging to another until some demand against him is satisfied.—Bouvier's Law Dictionary, tit. *Lien;* Peck v. Jenness, 7 Howard, 620; 1 Story's Equity, § 506; Willard's Equity, § 123; Cole-

man v. Shelton, 2 McCord's Ch. 426; McFarland v. Wheeler, 26 Wend. 467; Gilman v. Brown, 1 Mason, 192.

3. Parties may acquire a lien on goods by contract, when they had none at common law; or they may acquire a lien by contract in cases where the common law gave it, with modifications of the common-law right; but, in all such cases, if they part with the possession, the same consequences follow as at common law, so far as the rights of third persons are concerned.—2 McCord's Ch. 126; 26 Wendell, 467; 32 Maine, 28; 1 Barbour's Ch. Rep. 480.

4. An equitable mortgage may be created in two ways: 1st, by any writing which shows the intention to create it; and, 2d, by a simple deposit of title-deeds. There must, however, be a delivery of the writing, or an actual delivery of the title-deeds; and a mere agreement to deliver, without actual delivery of the deeds, is not sufficient.—Miller on Equitable Mortgages, 218–20.

5. The liens of attachments have the same force and effect as the levy of executions, and will prevail over an unregistered deed of conveyance, and, consequently, over an equitable mortgage without notice.—Hervey v. Champion, 11 Humph. 569; Tyrell's Heirs v. Rountree, 1 McLean, 95; S. C., 7 Peters, 464; Redus v. Wofford, 4 Sm. & Mar. 579; Baldwin v. Leftwich, 12 Ala. R. 838; Cary v. Gregg, 3 Stewart, 433.

6. The contract between Schnetz & Hewitt and Moore, of July, 1849, did not create, and was not intended to create, a legal or equitable mortgage; and the parties themselves nowhere so term it, but always call it, what the law says it is, a lien or charge on the boat. It was intended only as a recognition of the statutory lien. 26 Wendell, 467.

7. If this contract did not create an equitable mortgage, the attaching creditors, having levied without notice of it, and having reduced their debts to judgment, have acquired a specific lien on the boat, which gives them a superior legal right; and the court will not deprive them of this right, since their equities are equal to

that of the complainants.—Cases cited to 5th paragraph *supra*.

8. The allegation of the amended bill, that Moore, by the endorsement on the enrollment, "acknowledged, admitted, declared and gave a lien," is inconsistent with itself, since the endorsement could not create a lien, and at the same time evidence the declaration or acknowledgment of a pre-existing lien. The endorsement was only intended to give notice of the pre-existing statutory lien, and it can have no other effect, either at law, or in equity.

9. The same principles and authorities are applicable to the claim of French & Co., and show that it cannot prevail over the liens of the attaching creditors.

GOLDTHWAITE & SEMPLE, *contra.*—1. The original contract between Moore and Schnetz & Hewitt was intended by the parties to create a special lien on the boat for the payment of the bills of exchange; and the circumstances under which it was made—the nature of the subject-matter of the contract, the payments which it was intended to secure, &c.—show that the parties did not contemplate that Schnetz & Hewitt should retain the possession of the boat. The validity of such a contract, as between the parties themselves, cannot be questioned. It is clear, both upon principle and authority, that whenever the acts of the parties show that it was their object and intention to charge specific property with the payment of a debt, a court of equity will enforce the agreement according to their intention; and it is entirely immaterial, whether there is a conveyance of the property, or only an agreement to convey: it is enforced as a trust. Fletcher v. Morey, 2 Story, 555. In equity, a mortgage is simply a charge upon property, for the security of a debt; and whenever such is the contract of the parties, equity will enforce it.—Fletcher v. Morey, *supra;* Davis v. Clay, 2 Miss. 161; Abbott v. Godfrey, 1 Mann. (Mich.) 178; Baldwin v. Jenkins, 23 Miss. 206; Dunning v. Stearns, 9 Barbour, 630.

2. The evidence shows that it was verbally understood between the parties, when it was found that the work

done by Schnetz & Hewitt on the boat exceeded the amount contemplated by the original contract, that the lien on the boat should cover the entire amount; and the endorsement on the enrollment of the boat, by Moore's directions, was intended as a recognition and acknowledgment by him of their right to look to the boat as a security for the payment of the drafts. This endorsement could not have been intended merely as a recognition of the lien of the Kentucky statute, or to give notice of the existence of that lien. The boat was intended to run between New Orleans and Montgomery; and it was specially stipulated that the endorsement should be continued on the boat's papers, no matter where she might be, until the drafts were fully paid. The endorsement, in connection with the circumstances under which it was made, amounts to a clear and explicit declaration of a trust, which a court of equity will enforce.—Exton v. Scott, 6 Simon, 31; Doe v. Knight, 5 B. & C. (12 E. C. L.) 351; Mobile and Cedar-Point R. R. Co. v. Tallman, 15 Ala. 472.

3. The lien created by these contracts will be enforced against the attachments of foreign creditors, whose levies were subsequently made; and this upon the principle, that attaching, execution, or judgment creditors, take only the actual interest which the debtor has in the subject of the levy.—Whitworth v. Gaugain, 3 Hare, 416; Kirsted v. Avery, 4 Paige, 10; In re Howe, 1 Paige, 125; Fletcher v. Morey, 2 Story, 555; 17 Howard, 584; 3 Vesey, 573; Burgh v. Burgh, Cases temp. Finch, 58; 3 Dess. 74. Foreign contracts, by a well-settled principle of international law, receive their full effect here, unless they are contrary to the laws or policy of this State.—Story's Conflict of Laws, §§ 324, 325, 325 b; Potter v. Brown, 5 East, 124; Kent's Com. (8th ed.) 579-80; Ohio Ins. Co. v. Edmondson, 5 La. 295.

4. Our registration laws do not apply to vessels trading, as this boat did, between Montgomery and New Orleans. Transfers and mortgages of such vessels are to be looked for in the ship's papers, and their registration according to the acts of congress.—Fontaine & Dent v. Beers &

Smith, 19 Ala. 722.   If our laws are held applicable, the case comes within the express exception of the statute relative to mortgaged property brought here by persons removing from another State.—Clay's Digest, 255, § 4.

5. The lien given by the Kentucky statute, which is set up in the first amended bill, must prevail over the claims of the foreign attaching creditors.—Story's Conflict of Laws, §§ 402, 402 *a;* Potter v. Brown, 5 East, 124; 5 La. 295; 8 Martin's (La.) R. 95; Carroll v. Waters, 9 *ib.* 500; 3 Hare, 416; 4 Paige, 10; 1 Paige, 125; 2 Story, 555; 3 Vesey, 573; 3 Dess. 74; 17 Howard, 584.

6. There is no inconsistency between the liens asserted in the original and amended bills, under the contract, and under the statute law of Kentucky.   Both may exist, at one and the same time, in favor of the same person; and if either is sustained, he is entitled to relief.

7. In relation to the claim of French & Co.: The statute of Indiana gave them a lien on the boat, to secure the amount due them for work done; which lien, under the authorities above cited, (paragraph 5,) they are here entitled to enforce.   In addition to this statutory lien, after the completion of the work, Moore executed to them, at New Orleans, the instrument set up in their cross bill, which was endorsed on the enrollment, and registered in the proper office; and by which, it is alleged and proved, he intended to declare and acknowledge a lien on the boat for the payment of this debt.   This instrument, construed in connection with the circumstances under which it was executed, as disclosed by the pleadings and proof, creates a valid trust in favor of French & Co., which a court of equity will enforce.—Fletcher v. Morey, 2 Story, 555; and other authorities cited to third paragraph *supra.*

WALKER, J.—The complainants in the original bill, Schnetz & Hewitt, and Thomas Moore, one of the respondents, at Louisville in the State of Kentucky, made a written contract under seal, whereby the former agreed to make an engine, and put it on board of a certain boat; and the latter agreed to pay therefor $3,400 during the progress of the work, and, besides, to give three "notes or

acceptances" for equal amounts, making together the
sum of $3,400. The writing concludes with a stipulation,
that for the better security of the payment "of the said
notes," Schnetz & Hewitt were to retain a special lien on
said boat and engine until "the notes" were paid.
Moore paid $3,400 during the progress of the work, and
accepted six bills of exchange, for amounts together
exceeding $3,400. The boat having been brought to
Montgomery in this State, was attached and libeled by
creditors of Moore & Jackman, the owners of the boat.
The bill asserts for the complainants a prior lien upon the
boat, and is designed to enforce that lien.

1. An attempt is made to sustain the complainants' claim
to a prior lien under a statute of the State of Kentucky,
where the contract was made, and the indebtedness to
complainants was incurred. By that statute, steamboats,
built, repaired and equipped in the State, are made *liable*
for all debts contracted by the master, owner, or consignee
thereof, on account of work, supplies, or materials, fur-
nished towards the building, repairing, fitting, furnishing
or equipping such steamboats, their engines, &c. ; and a
preference over all other debts, except for the wages of
the officers and crew, is given. By the same statute it is
provided, that the "lien given by the act" is invalid
against a purchaser without notice, unless suit be com-
menced within twelve months; but that a notice of the
lien, endorsed upon, or attached to the enrollment of the
vessel, shall operate as actual notice. The preference
given by the Kentucky statute cannot operate to defeat
liens acquired by virtue of attachments and libels in this
State before it was set up. This priority, or lien given by
the Kentucky statute, is not a matter of contract. "It is
extrinsic, and is rather a matter of personal privilege,"
given by the *lex loci contractus.*—Harrison v. Sterry,
5 Cranch, 298, 299. The just "comity," which is recog-
nized in the law, requires that a contract should be
expounded, and its obligations ascertained, according to
the law of the country where it is made. But this prin-
ciple does not extend to a recognition of liens, given by
the foreign law, when it would operate prejudicially to

the rights of others in the country where such lien is asserted. The liens given by the statute in one country, upon moveables, have no superiority to liens subsequently acquired in another country, to which those moveables are carried. In support of this proposition, we cite authorities which sustain it: Story's Conflict of Laws, §§ 323, 324, 325, 325 *a*, 325 *b*, 325 *c*; Lee v. Creditors, 2 Louisiana Ann. 599; Noble v. Steamboat St. Anthony, 12 Mis. 262; Harrison v. Sterry, *supra*; Goodsill v. Brig St. Louis, 16 Ohio, 178; Smith v. Union Bank, 5 Peters, 518; McMahan v. Green, 12 Ala. 71; Merrick & Fenno v. Avery, Wayne & Co., 14 Ark. 370.

A different rule may apply, in reference to maritime liens, existing by virtue of the general maritime law. There are, doubtless, reasons why such liens should have their superiority recognized, which do not apply to domestic liens. The law which gives them existence, is common to most, if not all commercial countries; and the necessities of maritime commerce seem necessarily to require a precedence for its liens.—Story's Con. of Laws, § 402. A sound public policy does not require, that liens, such as those springing up under the Kentucky statute, upon boats navigating our inland rivers, should have conceded to them a priority over other liens, which may be acquired in other States to which they may be carried. Steamboats might be covered up, if such priority was allowed, by antecedent liens, of which there was no notice; and great injustice might be done to those who trusted the boat, upon the assumption of its liability; and there would be great room for collusive arrangements, to shelter the boat, by virtue of such liens, from just debts.

2. It is contended that the complainants have no lien by virtue of their contract. It is argued, that the parties, in providing that Schnetz & Hewitt should retain a special lien, contemplated no other than the statutory lien. If this be so, the parties have done a vain and useless thing, in bringing the subject of a lien into their contract. The language employed is appropriate to create a lien, and to provide for its continuance. If the parties intended that the lien so held should exist by virtue of the statute of

Kentucky, and not of the contract, they have not said so; nor have they said that which authorizes us to infer it.

We give effect to the words of the contract, and allow a motive to the parties in the use of them, when we understand them as creating a lien; one to exist by virtue of, and to have effect determinable by, the contract. We adopt that view of the question, and thus avoid the necessity of considering what would be the rights of the parties, if there were no other lien than that given by the statute of Kentucky.

3. It is contended for appellants, that the well-ascertained technical meaning of the word *lien*, is a right to retain possession of property until a demand is satisfied; and that it must be so understood, where it occurs in the written contract above-named. It is true that common-law liens—for example, liens of carriers, inn-keepers, factors, and artificers—are mere rights to retain until the specific debt is satisfied, and cannot continue without possession. But, whatever may be the import of the word, when applied to that class of cases, or whatever may have been its original meaning, it has acquired, in our law, a much more extended signification. It is used to designate all the various charges of debts upon land or personalty, which are created by statute, or recognized in chancery and maritime law, although neither connected with, nor dependent upon possession.—Willard's Equity Jur. 123. Thus, we have the lien of a judgment; the lien of an execution; the lien of a partner; the lien of a legal or equitable mortgage; the lien of a vendor, and various other charges which are denominated liens; and in courts of equity, the term *lien* is used to denote a charge or incumbrance on a thing, where there is neither *jus in re*, nor *jus ad rem*, nor possession of the thing.—Peck v. Jenness, 7 Howard's Rep. 612, 619; The Brig Nestor, 1 Story, 73.

The term *lien*, having so comprehensive a signification, includes an equitable mortgage; and no perversion of its meaning will be involved in construing the written contract of the parties as an equitable mortgage.

[4.] The parties unquestionably had a right by contract to create a charge upon the boat, which would exist independent of the possession of the thing charged. The inquiry, unembarrassed by the technical meaning imputed to the word *lien*, is whether they have done so.

A lien merely co-existent with the possession of the boat, could not have been contemplated. The boat was not built by Schnetz & Hewitt. It does not seem to have been designed that it should ever go into their possession. The payments were to be made in four, six, and eight months. The contract provides, that the lien was to continue until the debts were paid. It would be a most unreasonable inference, that Schnetz & Hewitt were to retain the boat for eight months. That a steamboat should for eight months lie up, depreciating from natural decay, yielding no return for the heavy outlay in its construction, and probably requiring some expense to take care of it, would have been a most unreasonable exaction for Schnetz & Hewitt to make, or for Moore to grant. The loss from the delay would have been totally disproportioned to the interest upon the amount, or the value of the forbearance to collect it. (These considerations prove, with satisfactory certainty, the intention to create a lien for the security of the debt, which would exist without possession by the creditor. Such a lien has every characteristic of an equitable mortgage, and may properly be so denominated. Every agreement for a lien or charge *in rem* constitutes a trust, and is accordingly governed by the general doctrine of trusts. Such a lien or charge is called an equitable mortgage, because courts of chancery, regarding them as trusts to be enforced, attach to them the incidents of a mortgage. Thus, an agreement that bills should be paid out of the proceeds of certain property has been held to create an equitable mortgage.—Miller on Equitable Mortgages, 3. An agreement, " pledging and hypothecating " property for the payment of certain bills, was enforced as an equitable mortgage. Fletcher v. Morey, 2 Story, 555. A contract that a party " should have and maintain a lien " on chattels was characterized as " in the nature of an equitable mortgage,"

and as such enforced.—Dunning v. Stearns, 9 Barb. Sup. Ct. Rep. 630. And an unsealed instrument of writing, pledging the real and personal estate of a railroad company for the faithful performance of a contract, was held by this court to be an equitable mortgage.—M. & C. P. R. R. Co. v. Talman, 15 Ala. 473; see, also, Whitworth v. Gaugain, 3 Hare, 415; Campbell v. Worthington, 6 Verm, 448; Bank of Kentucky v. Vance, 4 Littell, 168; Marshall v. Lewis, 4 Littell, 140; *In re* Howe, 1 Paige, 125; Abbot v. Godfrey, 1 Man. (Mich.) 178; Coster v. Bank of Georgia, 24 Ala. 37; Kelly v. Payne, 18 Ala. 371.

[5.] The authorities cited upon the brief of the counsel for appellees, show that the equitable mortgage, created by the contract of Moore with Schnetz & Hewitt, overrides the liens of the attaching and libeling creditors. See those cases; also, Willard's Eq. Jur. 443; 2 Story's Eq. Jur. 655, § 1228; Jenkins v. Bodley, 1 S. & M.'s Ch. R. 338; Dunlap v. Burnett, 5 S. & M. 702. The charge of an equitable mortgage, like other equities, is maintainable except against innocent purchasers for value without notice. Perhaps, the creditors who attach and libel the boat, may be deemed purchasers for some purposes. Ohio Life Ins. Co. v. Ledyard, 8 Ala. 866. But, if purchasers, the consideration is the pre-existing indebtedness; and they do not fall within the rule, which protects innocent purchasers for a valuable consideration without notice.—Boyd v. Beck, 29 Ala. 703. If, by contract, the creditors had obtained a lien for the security of their preexisting debts, they would not be entitled to protection as purchasers for value.—Boyd v. Beck, *supra;* Dickerson v. Tillinghast, 4 Paige, 214; Donaldson v. Bank of Cape Fear, 1 Dev. 103; Powell v. Jeffries, 4 Scam. (Ill.) 387; Rowan v. Adams, 1 S. & M. Ch. 45. There is nothing in the nature of the lien given to the creditors in this case, which can make their position more favorable, so far as this question is concerned, than it would have been had their lien been regularly created by contract.—Carter v. Champion, 8 Conn. 549. The attaching creditor has a right to take what belongs to his debtor. In the absence of fraud, he stands as a volunteer in the place of the debtor.

Wanzer v. Truely, 17 How. 584; Whitworth v. Gaugain, 3 Hare, 416, 25 En. Ch. R. 416.

[6.] In this State, an unrecorded mortgage is postponed to the lien of a creditor without notice; but that results from our registration statutes, which can have no influence upon this case, because the suit was instituted within twelve months after the property was first brought to this State.—Clay's Digest, 255, § 4. This point is conclusive of the inapplicability of the registration laws of Alabama to the case; and it is, therefore, unnecessary for us to consider whether any of our registration laws embrace an instrument like this, creating an equitable mortgage, or whether a mortgage on a steamboat plying between New Orleans and Montgomery is within the operation of those statutes.—See, however, Fontaine & Dent v. Beers, 19 Ala. 722; McCain v. Wood, 4 Ala. 258; Falkner v. Jones, 12 Ala. 165; Morgan v. Morgan, 3 St. 383; Bank of Kentucky v. Vance, 4 Lit., *supra.*

[7.] The Kentucky registration law, which was pleaded, makes a "deed of mortgage, or deed of trust," void against creditors and purchasers for valuable consideration without notice, unless deposited for record as therein required. This law has been held in Kentucky not to include an equitable mortgage, which merely gives a charge upon property, without conveying it.—Bank of Kentucky v. Vance, 4 Littell, 174. We follow that decision here, because we approve the reasoning of it, although it has not been pleaded or given in evidence, and is therefore not binding upon us. As the Kentucky registration statute does not include the instrument which gives to the complainant their lien, it is unnecessary for us to pass upon any other objection to the defense attempted to be based upon the foreign registration laws.

[8.] The non-conformity of the securities given to those contemplated in the contract, and the blending in the same securities of an additional amount of debt, to that for which the contract provided a lien, would not destroy the lien so provided.—Boyd v. Beck, 29 Ala. Rep. 703; Cullum v. Bank, 23 Ala. Rep. 797; Hair v. Grigsby, 18 Ala. Rep. 44.

[9.] One partner has the right to incumber the entire interest in the personal property of the partnership for the security of its debts. It would, therefore, be no objection to the extension of the complainants' lien over the entire interest in the boat, that the equitable mortgage was given by Moore alone, if a partnership existed between Moore and Jackman.—Story on Partn. § 94; Tapley v. Butterfield, 1 Metcalf, 515; Deckard's case, 5 Watts, 122; Milton v. Masher, 7 Metc. 244. But it no where appears from the original or amended bills, that Moore and Jackman were partners, either in the ownership of the boat, or in running it after it was built. The mere fact that Moore owned a certain interest in the boat, and Jackman the remaining interest, does not, of itself, constitute them partners. There may be a joint property in a steamboat, without the existence of a partnership. Unless a partnership existed, or Moore had authority from Jackman to bind his interest, the lien given by the former could cover only the interest which he had in the boat. As neither a partnership nor an authority to Moore from Jackman is shown, the operation of complainants' lien must be confined to Moore's interest in the boat.

[10.] Our argument thus far shows, as we think, that Schnetz & Hewitt have a lien, by virtue of their contract of July, 1849, which they are entitled to enforce in this suit. But the sum for which a lien is given by that contract is limited to $3,400. The debt of the complainants is much larger, and is shown by the proof to have become so in consequence of work done in addition to that prescribed by the contract. The lien given by the contract cannot be enlarged, so as to secure this addition to the indebtedness, upon the ground that it was verbally agreed, or intended, or understood, when the additional work was done, that it should be so enlarged; or upon the ground that the additional indebtedness was contracted on the faith of the lien; for there is no averment in the original or amended bills of such facts. In the entire omission of any such averments, this case differs from Fletcher v. Morey, 2 Story, 555.

[11.] After the bills of exchange were given to secure

the debt due Schnetz & Hewitt, Moore caused an endorsement upon the enrollment of the boat by the surveyor and inspector of the port of Louisville to be made, as follows: "Messrs. Schnetz & Hewitt hold a lien on said boat, to secure the payment of six drafts," &c., "and this endorsement to be continued on all enrollments issued for the boat, until all the above drafts are fully paid, and Schnetz & Hewitt are fully satisfied." The amended bill alleges, that Moore, by that memorandum, "acknowledged, admitted, declared, and gave a lien;" and the original bill says, that he thereby "acknowledged and recognized the lien."

The majority of the court regard the declaration made by Moore to the surveyor and inspector of customs, and endorsed by his directions upon the enrollment of the vessel, upon the averments of the bill above stated, as a declaration of a trust in favor of Schnetz & Hewitt, for the entire amount of debt secured by the drafts described in the endorsement upon the enrollment, which trust, they think, is valid in equity, and being sustained by proof, must be upheld in this case. Taking all the circumstances alleged in the bill together, my opinion is, that the endorsement upon the enrollment was simply made by Moore's direction for the purpose of giving notice of the pre-existing statutory lien, and was not designed to evidence the declaration of any new trust. The authorities referred to on the brief of counsel, show that such a declaration of trust, as my brethren suppose was made, will be sustained in equity.

[12.] The complainants in the cross bill are entitled to no relief. The language endorsed upon the enrollment, in favor of the complainants in the cross bill, which touches the subject of lien, is as follows: "The above obligation being given for materials and workmanship on the boat building, the mortgage or lien to continue *on the boat papers*, as security," &c. If these words were regarded as giving a lien, it would be a lien *"on the boat papers,"* which would be absurd. What is said about continuing the lien on the boat-papers, means nothing more than that the fact of the existence of the lien, given by the

statute to the boat-builder, should remain evidenced by an endorsement on the papers of the boat. Its object was merely to give notice that a lien existed, by preserving a statement of that fact upon the papers of the boat.

The decree of the court below is reversed, and the cause remanded, that a decree may be rendered consistent with the foregoing opinion. The appellant must pay the costs of this court.